**F I L E D**

PUBLISH

**May 25, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSHUA McQUEEN, a minor, by and
through his parents, KEITH
McQUEEN and SHAUNA McQUEEN,

Plaintiff - Appellant,

v.

No. 06-1169

COLORADO SPRINGS SCHOOL
DISTRICT NO. 11, and various of its
elected and appointed representatives
in their official capacity,

Defendant - Appellee,

_____

COLORADO ASSOCIATION OF
SCHOOL BOARDS; COLORADO
DEPARTMENT OF EDUCATION,

Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 04-cv-1116-LTB-MEH)**

---

Michael C. Cook, Michael C. Cook, P.C., Colorado Springs, Colorado, for
Plaintiff - Appellant.

Brent E. Rychener (Deborah S. Menkins with him on the brief) of Holme Roberts
& Owen LLP, Colorado Springs, Colorado, for Defendant - Appellee.

John W. Suthers, Attorney General, and Antony B. Dyl, Assistant Attorney General, State of Colorado, Denver, Colorado, filed an amicus curiae brief for the Colorado Department of Education.

Kathleen M. Shannon, Colorado Association of School Boards, Denver, Colorado, filed an amicus curiae brief for the Colorado Association of School Boards.

---

Before **HARTZ**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Joshua McQueen, formerly a student in Colorado Springs School District Number 11 (the District), suffers from autism. Under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1482, he is entitled to a free appropriate public education (FAPE), *id.* §§ 1400(d)(1)(A), 1412(a)(1)(A). Joshua, through his parents, claims that the District's policy limiting extended-school-year (ESY) services (provided during the summer) to maintenance of previously learned skills violates the IDEA because such services must be designed to meet the unique need of autistic children for continual development of new skills. The district court rejected his claim. He timely appealed and we have jurisdiction under 28 U.S.C. § 1291. In support of the District's defense of its policy, the Colorado Department of Education (CDE) and the Colorado Association of School Boards, whose membership includes the boards of education for all 178 Colorado school districts, have filed amicus briefs. We do not, however, decide whether the District's policy is consistent with the IDEA.

We hold that Joshua failed to exhaust his administrative remedies under 20 U.S.C. § 1415 and that no exception to the exhaustion requirement applies. Therefore, we reverse the district court's judgment on the merits and remand to the district court with instructions to dismiss the suit for failure to exhaust.

## I.    BACKGROUND

### A.    Individuals with Disabilities Education Act

The IDEA is a "spending statute that imposes obligations on the states to provide certain benefits in exchange for federal funds." *Ellenberg ex rel. S.E. v. N.M. Military Inst.*, 478 F.3d 1262, 1274 (10th Cir. 2007). One of its purposes is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States receiving federal funds under the IDEA are to provide a FAPE "to all children with disabilities residing in the State between the ages of 3 and 21." § 1412(a)(1)(A). The Supreme Court has held that a state "satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982).

A child's FAPE must conform with his or her individualized education program (IEP). *See* § 1401(9)(D). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that

will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993); *see* § 1414(d)(1)(A) (defining IEP). The IEP may include ESY services if such services "are necessary for the provision of FAPE to the child." 34 C.F.R. § 300.106(a)(2) (2006); *see Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4 of Bixby, Tulsa County, Okla.*, 921 F.2d 1022, 1028 (10th Cir. 1990) (provision of ESY services turns on "whether the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an educational program during the summer months" (internal quotation marks omitted)). If provided, ESY services must "[m]eet the standards of the [state educational agency]," 34 C.F.R. § 300.106(b)(2), which in this case is the CDE, *see id.* § 300.41; Colo. Rev. Stat. Ann. § 22-20-104(1)(a) (2007).

### B. Prior Proceedings

On May 6, 2003, Joshua's parents and District personnel met to review his IEP for the 2003–2004 school year. The meeting also considered whether he was eligible for ESY services for the summer of 2003. District personnel determined that Joshua was eligible for ESY services. Joshua alleges that the services offered were to be limited to one hour and ten minutes per day from June 9 to August 1, 2003. His parents "requested that the ESY [services] focus on skills identified in the 2002–2003 IEP that [he] had not yet achieved, as well as skills

-4-

identified for the 2003–2004 IEP." Aplt. App. at 31 (Mem. Op. & Order, Mar. 8, 2006). But their request, apparently premised on their understanding that autistic children require continual development of new skills to retain previously learned skills, was rejected. They then allegedly supplemented the District's ESY services for Joshua in the summer of 2003 with additional educational services at their own expense.

On July 7, 2003, Joshua's attorney filed a demand for a due-process hearing. It contended that the District's policy, which followed guidelines established by the CDE, violated the IDEA because it limited ESY services to maintaining learned skills and did not permit teaching new skills. The demand's proposed resolution of the dispute sought the following determinations and relief:

> A.   The ESY services offered by the District are not appropriate for Joshua based on his individual needs in that they do not provide a sufficient number of hours and are limited to maintaining existing skills rather than teaching new skills in areas of Joshua's curriculum that need continuous attention.
> B.   That the District's proposed ESY services were not reasonably or appropriately designed to provide Joshua with any meaningful or appropriate educational benefit and therefore deny him the free and appropriate education he is entitled to receive under [Colorado's Exceptional Children's Educational Act] and IDEA.
> C.   That the services provided to Joshua and paid for by the McQueens during the 2003 extended school year are appropriate and necessary to provide Joshua with an appropriate public education.
> D.   That the McQueens are entitled to claim and recover reimbursement for all of their out-of-pocket educational expenses incurred during the 2003 extended school year in providing Joshua with an appropriate education;
> E.   For reimbursement of all of the McQueens' costs, disbursements, expert fees, and reasonable attorneys' fees; and

F.    For such other and further relief as the hearing officer deems fair and reasonable.

Demand for Impartial Due Process Hr'g at 2–3, *McQueen v. Colo. Springs Sch. Dist. No. 11*, No. L2003:113 (Colo. Dep't of Educ. July 7, 2003).

On September 22, 2003, the parties agreed to bifurcate the proceedings. In the first stage a hearing officer would hear argument on the primary legal issue in the case, namely, "whether the CDE guidelines for determining ESY services and the [District's] ESY policy violate the IDEA by limiting required ESY services to maintaining learned skills rather than developing new skills." Aplt. App. at 57 (Stipulated Mot. for Bifurcation of Due Process Hr'g). With respect to this issue, each party could call one expert witness "to testify generally about educating children with autism." *Id*. at 58. After the hearing officer ruled, the parties could either appeal the ruling to a state administrative law judge (ALJ) or proceed to an evidentiary hearing focusing on the particulars of Joshua's case.

At the September 23 proceeding Joshua's parents called an expert witness on the education of children with autism, and the parties presented legal argument. The only exhibits were a copy of the CDE guidelines on ESY services and the resume of the expert. In a written order filed November 20, 2003, the hearing officer concluded that the CDE guidelines and, by implication, the District's policy did not violate the IDEA. He noted that his decision did not

consider "whether [Joshua's IEP] as implemented during the school year or extended school year provided a [FAPE]." *Id*. at 63.

Joshua's parents appealed the hearing officer's decision on his behalf, and an ALJ affirmed on April 30, 2004. The ALJ noted, however, that his review was

> limited to the legal issue of whether the ESY process established by CDE and used by the District violates the IDEA on its face. It is possible in an individual case, based on the particular facts of that case, that an ESY program as designed would significantly jeopardize the benefits previously gained by the child. To decide whether that occurred in Joshua's case would require much more extensive evidence than was presented in the limited hearing conducted by the [hearing officer]. This factual issue was not before the [hearing officer] and is not before the [ALJ] on this state level review.

*Id*. at 71.

Rather than continue to an evidentiary hearing, Joshua's parents on June 1, 2004, filed on his behalf a complaint in the United States District Court for the District of Colorado. The Complaint, which names as defendants the District "and various of its elected and appointed representatives in their official capacities," *id*. at 7, asks the court to rule that the District's ESY policy violates the IDEA and then remand to the hearing officer (1) to determine how much to reimburse Joshua's parents for costs and expenses incurred by them in providing ESY services to Joshua over the summer of 2003, (2) to determine what compensatory educational services should be provided to Joshua, and (3) to award attorney fees. The Complaint repeats the contention that "[t]he District's ESY

policy violates the IDEA in that it prevents ESY services from being individually designed and adapted to address the individual and unique needs of the child that result from the child's disability." *Id*. at 16. And it alleges compliance with the IDEA's administrative procedures, *see* 20 U.S.C. § 1415(i)(2), and jurisdiction of the district court under § 1415(i)(3)(A). The District's Answer addresses the merits but also

> den[ies] that [the district court] has jurisdiction to award or order the [hearing officer] to award reimbursement, compensatory education, damages, and attorneys fees and costs since Plaintiffs have not exhausted their administrative remedies with respect to the issue of whether Defendants violated the IDEA . . . with respect to Joshua McQueen as a due process hearing has not yet been held on this issue.

Aplt. App. at 20–21. On March 8, 2006, the district court held that the District's ESY policy and the CDE guidelines regarding ESY services do not violate the IDEA. The court did not address whether IDEA administrative procedures had been exhausted.

On appeal the District again contends that failure to exhaust administrative remedies bars this action. It asserts:

> [T]he administrative proceedings [in this case] addressed only a single bifurcated legal issue. After losing on this bifurcated legal issue on both administrative levels, plaintiffs sought immediate judicial review rather than proceeding to an evidentiary hearing. The lack of any evidentiary hearing or record raises a jurisdictional issue for this Court.

Aplee. Br. at 1.  Joshua's reply brief addresses this challenge only in a footnote, asserting that "there was an evidentiary hearing in front of the [hearing officer] with respect to the scope and content of the District's ESY policy," and "[e]vidence regarding Joshua's individual circumstances is not relevant to [the] challenge [to the District's ESY policy]."  Aplt. Reply Br. at 11 n.3.

## II.    DISCUSSION

### A.    Exhaustion

Before bringing suit under the IDEA, Joshua and his parents had to exhaust their administrative remedies.  *See Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064–65 (10th Cir. 2002).  "As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the [IDEA's] administrative framework to resolve any conflicts they had with the school's educational services."  *Id.* at 1064.  Requiring administrative exhaustion of IDEA claims advances several objectives:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Romer*, 992 F.2d at 1044 (internal quotation marks omitted).  Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, *see, e.g.,*

*Cudjoe*, 297 F.3d at 1063, recent Supreme Court jurisprudence in other contexts casts doubt on that characterization, *see Jones v. Bock*, 127 S. Ct. 910, 921 (2007) ("[F]ailure to exhaust is an affirmative defense under the [Prison Litigation Reform Act], and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The characterization is important, however, only when the defendant has waived or forfeited the issue: If exhaustion is a jurisdictional requirement, the district court *must* always dismiss if there has been a failure to exhaust. If exhaustion is not jurisdictional, the court must dismiss only if the issue has been properly presented for decision. *See id*. at 918–19. In this case we need not decide whether exhaustion is jurisdictional because there is no question of waiver or forfeiture by the District. And, of course, the failure of the district court to address exhaustion does not preclude us from addressing that ground for dismissal when it was properly raised below. *See Ellenberg*, 478 F.3d at 1275 n.11; *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1454 (10th Cir. 1990).

The controversy in this case concerns what constitutes exhaustion of the IDEA's administrative procedure. This procedure, set forth in 20 U.S.C. § 1415, was amended effective July 1, 2005. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, § 101, 118 Stat. 2647, 2715–31; *id.* § 302, 118 Stat. at 2803 (effective date). Although we assume that the preamendment version of the statute was in effect when this suit was filed on

June 1, 2004, it is unnecessary to resolve the issue because the provisions central to the disposition of this appeal have not changed. Citations to § 1415, except where noted, refer to both the version effective July 1, 2005, and its predecessor.

Section 1415 grants the right to present to the school district a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a child with a disability], or the provision of a [FAPE] to such child." § 1415(b)(6). In conjunction with the complaint the parents must provide the district with a notice that includes "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem" and "a proposed resolution of the problem to the extent known and available to the parents at the time." § 1415(b)(7)(B)(ii), (iii) (preamendment version); *see* § 1415(b)(7)(A)(ii)(III), (IV) (effective July 1, 2005). The complaint, if not settled through mediation, *see* § 1415(e), or a preliminary meeting, *see* § 1415(f)(1)(B)(i) (effective July 1, 2005), is resolved through an impartial due-process hearing, *see* § 1415(f)(1). At the hearing the parties have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h)(2). The hearing officer must prepare findings of fact and a decision. *See* § 1415(h)(4).

Either party may appeal the hearing officer's decision to the state educational agency, which reviews the findings and decision and "make[s] an independent decision upon completion of such review." § 1415(g). Only after

-11-

the state agency has issued its decision may a party bring "a civil action with respect to the complaint" in state or federal court. § 1415(i)(2)(A); *see id.* § (i)(1)(B); *id.* § (i)(3)(A) (jurisdiction of federal courts).

The administrative process under § 1415 was not completed in this case. We recognize that the state educational agency issued a decision. But it addressed only an abstract question of law: "whether the CDE guidelines for determining ESY services and the [District's] ESY policy violate the IDEA by limiting required ESY services to maintaining learned skills rather than developing new skills." Aplt. App. at 57 (Stipulated Mot. for Bifurcation of Due Process Hr'g). The role of the § 1415 process is to resolve a complaint about the education of a specific child. Joshua's demand for a due-process hearing sought determinations that he was entitled to additional ESY services during the summer of 2003 and that his parents should be reimbursed for expenses incurred in paying for those services. Yet, as noted by the hearing officer, still to be decided was "whether [Joshua's IEP] as implemented during the school year or extended school year provided a [FAPE]." *Id.* at 63. We see no barrier to an "interlocutory appeal" within the administrative process, as occurred in this case; but the IDEA does not provide for judicial review of such an interlocutory determination before resolution of the entire administrative complaint. Accordingly, we hold that Joshua has not fully exhausted the administrative remedies available under § 1415. We now turn to whether exhaustion was excused in this case.

-12-

**B. Exceptions to Exhaustion Requirement**

**1. Futility and Inadequate Relief**

In *Romer* we recognized that "[e]xhaustion is not required . . . where it would be futile or fail to provide adequate relief." 992 F.2d at 1044. In that case the plaintiffs, suing under the IDEA and 42 U.S.C. § 1983, claimed that the CDE had denied them "individualized IEPs because its policies arbitrarily predetermine[d] the duration of [extended-school-day] and ESY services and use[d] a single criterion to determine eligibility for ESY services." *Id.* at 1043. We held that exhaustion for these claims was not excused under the futility or inadequate-relief exceptions. We said that "[a]dministrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Id.* at 1044. And we included dictum that exhaustion is not required "where plaintiffs assert violations of the IDEA's due process provisions," *id.*, apparently referring to such matters as notice and fair hearing procedures, *see Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992) (impartiality of hearing officer). *Romer*, however, declared that the claims before the court did "not target structural or due process concerns, but rather the effect of a single component of CDE's educational program on individual children's IEPs." 992 F.2d at 1044. "This is not," we said, "the kind of systemic violation that renders the exhaustion requirement inadequate or futile . . . ." *Id.*

-13-

In our view *Romer* requires the same conclusion here. Central to the allegations of the plaintiffs in both *Romer* and this case is the question of the extent of ESY services. As in *Romer*, Joshua's allegations focus on the "effect of a single component of CDE's education program on individual children's IEPs." *Id.* The overriding consideration is whether it is clear at the outset that the administrative procedure under the IDEA could not provide Joshua with the FAPE to which he is entitled. Only then could we say that pursuing administrative remedies would be futile or lead to inadequate relief. Because we have no factual record on Joshua's specific condition or needs, we can hardly say that the District would inevitably deny the FAPE that it should provide him. Accordingly, neither the futility exception nor the inadequate-relief exception to the exhaustion requirement excuses the failure to exhaust administrative remedies for Joshua.

## 2. Policies or Practices of General Applicability

*Romer* also stated in dictum that there may be an exception to the exhaustion requirement when "'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law.'" *Id.* (quoting H.R. Rep. No. 99-296, at 7 (1985)); *see Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996).[1] We explained that exhaustion may

---

[1]We note that we have never excused a party's failure to exhaust its IDEA administrative remedies under the general-applicability exception. *See, e.g., Ellenberg*, 478 F.3d at 1277; *Urban*, 89 F.3d at 725; *Romer*, 992 F.2d at 1044–45.

not be required in that circumstance if a plaintiff's challenge to a policy of general applicability "raise[s] only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." *Romer*, 992 F.2d at 1044. By the same token, however, exhaustion is still required unless "the underlying purposes of exhaustion would not be served." *Id.*

In *Romer* we held that both of plaintiffs' claims needed to be exhausted. Determining whether the "CDE's policies have denied children with disabilities appropriately individualized IEPs," we explained, is a "factually intensive inquiry into the circumstances of each individual child's case" and "is precisely the kind of issue the IDEA's administrative process was designed to address." *Id.* As to the plaintiffs' contention that the CDE's guidelines arbitrarily predetermined the duration of extended-school-day and ESY services, we acknowledged that such an argument "arguably asserts a facial violation of the IDEA's individualization requirement." *Id.* at 1045. Nevertheless, the contention "still ultimately requires a determination as to whether any individual child was denied a [FAPE]. Such a determination is enhanced by the factual details of a particular child's case." *Id.*; *cf. Urban*, 89 F.3d at 725 (general-applicability exception does not apply when party challenges particulars of a child's IEP).

The same analysis applies here. To be sure, Joshua contends that the CDE guidelines and the District's policy facially violate the IDEA because they allegedly prohibit teaching new skills in ESY programs. But the ultimate issue in

the case—and the decisive consideration for the reimbursement claim in district court—is whether Joshua received an appropriately individualized IEP and whether he was denied a FAPE. We therefore conclude that the general-applicability exception to exhaustion does not apply.

## III.   CONCLUSION

We REVERSE the district court's judgment on the merits and REMAND to the district court with instructions to DISMISS the case.