**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN A. ACHA,

     Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

     Respondent,

------------------------------

OFFICE OF SPECIAL COUNSEL,

     Amicus Curiae.

No. 15-9581

_____

**Appeal from the Department of Agriculture**
**(Department No. DE-1221-13-0197-W-2)**
_____

Ryan C. Gilman, Gilman Law, LLC., Glenwood Springs, Colorado, for Petitioner.

Emma E. Bond, Trial Attorney, U.S. Department of Justice, Washington, D.C., (Benjamin C. Mizer, Principal Deputy, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Elizabeth M. Hosford, Assistant Director, U.S. Department of Justice, Washington, D.C., and Rayann Lund, of Counsel, Litigation Specialist, U.S. Department of Agriculture Forest Service, Albuquerque, New Mexico, with her on the brief), for Respondent.

Carolyn N. Lerner, Special Counsel, Louis Lopez, Associate Special Counsel, and Shayla Silver-Balbus, Attorney, U.S. Office of Special Counsel, Oakland, California, filed a brief for Amicus Curiae.

_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

Petitioner John A. Acha worked as a Purchasing Agent for the Forest Service, an agency of the Department of Agriculture, at the White River National Forest in Glenwood Springs, Colorado. Petitioner's job, which was subject to a one-year probationary period, primarily consisted of meeting the Forest Service's purchasing needs. Petitioner was also responsible for ensuring that all purchases complied with the Federal Acquisition Regulation (FAR), a set of "policies and procedures [that govern] acquisition by all executive agencies." 48 C.F.R. § 1.101.

In January 2012, a few months into his job, Petitioner submitted a report to his direct supervisor that documented an apartment rental he had helped secure on behalf of the Forest Service. In this report, Petitioner noted that another Forest Service employee "had put $500.00 of his own money down as the deposit on the [apartment] unit." Petitioner believed this specific employee did not have the authority to obligate the government in such a manner and therefore violated the FAR when he made this unauthorized deposit. Petitioner's supervisor, however, did not act on Petitioner's concerns; in fact, his supervisor instructed him to delete the report's reference to the deposit. Petitioner followed the instructions and deleted the reference.

Several months later in April, Petitioner sent an email to the Department of Agriculture's Office of Inspector General in which he again mentioned that the

2

Forest Service employee had violated the FAR when he made the unauthorized deposit on the apartment. Petitioner also indicated in his email that he had previously told his supervisor about this violation; that, in response, his supervisor had instructed him to cover up the violation; and that he was punished afterward and treated poorly for following this instruction. Like Petitioner's supervisor, however, the record does not indicate that the Inspector General ever took any actions on the issues Petitioner disclosed in his email.

Petitioner was eventually terminated during his probationary period from his position with the Forest Service. He filed a complaint with the Office of Special Counsel (OSC), the independent agency responsible for protecting federal employees from prohibited personnel practices, alleging that he was actually terminated because he had disclosed to the Inspector General in April that (1) his fellow employee's unauthorized deposit violated the FAR, (2) his supervisor had directed him to cover this up, and (3) he had been punished for helping in the cover-up. Petitioner, in other words, alleged that he had been terminated because he was a whistleblower. *See* 5 U.S.C. § 2302(b)(8). The OSC eventually closed its inquiry into Petitioner's complaint and refused to seek any corrective action on his behalf from the Merit Systems Protection Board (MSPB), the independent agency with the power to actually order corrective action for employees affected by prohibited personnel practices. The OSC determined that no official involved in Petitioner's termination

3

knew of his email to the Inspector General and, as such, his email could not have contributed to his termination. *See* 5 U.S.C § 1221(e)(1).[1]

As a result, Petitioner appealed the OSC's determination and sought corrective action from the MSPB himself. *See* 5 U.S.C. § 1221(a). As he did before the OSC, Petitioner argued that he was fired for making protected whistleblowing disclosures to the Inspector General in April. But this time around he *also* argued that he was fired for disclosing the FAR violation to his direct supervisor in January. The Department of Agriculture objected to Petitioner's new allegation that he was terminated for making a whistleblowing disclosure in January. It argued that because Petitioner had not raised this argument before the OSC, he had not exhausted all of his administrative remedies before the OSC regarding his January disclosure. *See* 5 U.S.C. § 1214(a)(3). And because this failure to exhaust requirement is jurisdictional in nature, *e.g.*, *Ellison v. Merit Sys. Protection Bd.*, 7 F.3d 1031, 1037 (Fed. Cir. 1993),[2] the Department of Agriculture claimed that the MSPB lacked jurisdiction to consider whether Petitioner was terminated for making this January disclosure.

---

[1] Petitioner also argued to the OSC that he was fired because he had refused to participate in any further violations of the FAR. *See* 5 U.S.C. § 2302(b)(9). Petitioner, however, does not present this issue on appeal before our Court, nor does it affect his appeal in any way, so we do not consider it.

[2] Until 2012, the United States Court of Appeals for the Federal Circuit had exclusive jurisdiction "to review a final order or final decision of the [MSPB]." 5 U.S.C. § 7703(b)(1) (2006 & Supp. V 2011). In 2012, however, Congress amended this statute for federal employees who allege that they were subjected to prohibited personnel practices because of their whistleblowing disclosures. In those instances, federal employees may now appeal the MSPB's decisions to the "United States Court of Appeals for the Federal Circuit *or any court of appeals of competent jurisdiction*"

4

Petitioner responded that he had made his January disclosure to his supervisor during his "normal course of duties," which meant that, at the time he filed his complaint to the OSC, he necessarily could not have received any corrective action from the MSPB for that disclosure. *See, e.g.*, *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1352 (Fed. Cir. 2001) (holding that "an employee who makes disclosures as part of his normal duties" is not a protected whistleblower), *superseded by statute*, Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465. Thus, Petitioner contended that he had no reason to argue before the OSC that he was terminated for making his January disclosure. But after the OSC had closed its inquiry into his case, Congress passed the Whistleblower Protection Enhancement Act of 2012 (WPEA), which changed the law and allowed employees to obtain corrective action for disclosures they made in their normal course of duties in certain circumstances. *See* 5 U.S.C § 2302(f)(2). Further, the MSPB held in a separate case that the new protections given to disclosures made during the normal course of an employee's duties applied retroactively to all pending cases before the MSPB. *Day v. Dep't of Homeland Sec.*, 119 M.S.P.R. 589, 602 (2013). In light of the WPEA and the MSPB's decision in *Day*, Petitioner argued that the MSPB should excuse him from the exhaustion requirement for his January disclosure; indeed, he contended that

---

for a five-year trial period that ends in late 2017. 5 U.S.C. § 7703(b)(1)(B) (2012) (emphasis added), *amended by* 5 U.S.C. § 7703(b)(1)(B) (Supp. II 2014).

As a result, we have had jurisdiction over cases like the one Petitioner brings before us today for only four short years, and our caselaw regarding MSPB decisions that deal with whistleblowing allegations is thus virtually non-existent. We therefore utilize many of the Federal Circuit's past decisions in this area of law for guidance.

5

he should not be punished for refusing to make then-frivolous arguments in his complaint to the OSC.

But Petitioner further argued that he did not even need to be excused from the exhaustion requirement because he had, in fact, exhausted his remedies for the January disclosure. Specifically, he claimed that although he did not actually *allege* in his complaint to the OSC that he was terminated for making his January disclosure, he did include *information about* the January disclosure in his complaint. For support, he noted that he had attached his April email to the Inspector General to his complaint to the OSC and that in this email he had specifically discussed that he disclosed the FAR violation to his supervisor in January and was punished for doing so. He reasoned that this was enough for him to exhaust his administrative remedies, for the failure to exhaust requirement demands only that an employee "give the Office of Special Counsel *sufficient basis to pursue an investigation* which might have led to corrective action." *Serrao v. Merit Sys. Protection Bd.*, 95 F.3d 1569, 1577 (Fed. Cir. 1996) (emphasis added) (internal quotation marks omitted).

The MSPB agreed with Petitioner and concluded that his failure to argue before the OSC that he was terminated for making the January disclosure to his supervisor was not fatal to its jurisdiction. Although it did not mention *Day* or the change in law brought about by the WPEA, it agreed with Petitioner that he had provided enough information about his January disclosure to the OSC so that the OSC could sufficiently pursue an investigation of that claim. Thus, the MSPB

6

determined that "although the allegations could be clearer," Petitioner exhausted his remedies before the OSC regarding the January disclosure.

Moving on to the merits, however, the MSPB determined that Petitioner was not entitled to corrective action for either his January disclosure to his supervisor or his April disclosure to the Inspector General. Regarding his April disclosure, the MSPB agreed with the OSC that no officials involved in Petitioner's termination had knowledge of his email to the Inspector General, so it could not have contributed to his termination. *See* 5 U.S.C § 1221(e)(1). And regarding the January disclosure, the MSPB recognized that although disclosures made during the normal course of duties now *could* warrant corrective action under the WPEA, such corrective action was not guaranteed. Instead, the MSPB concluded that corrective action for disclosures made during the normal course of duties was contingent on whether an employee could prove that the officials responsible for the personnel action at issue acted with an improper "retaliatory motive"—that is, a heightened burden that is not required when a whistleblower makes a disclosure *outside* the normal course of his duties. *Compare* 5 U.S.C § 2302(f)(2) (forbidding personnel actions relating to a disclosure made during the normal course of duties only if the action is "in reprisal for" the disclosure), *with* 5 U.S.C § 2302(b)(8) (forbidding personnel actions relating to all other disclosures when the action is merely "because of" the disclosure). In the MSPB's eyes, if the employee could not prove such a motive, then the employee's disclosure was not a "protected" whistleblowing disclosure and therefore could factor into the personnel action at issue without being unlawful. Utilizing this logic, the

7

MSPB concluded that even if Petitioner could prove his January disclosure factored into his termination, he could not prove the officials responsible for his termination acted with a retaliatory motive regarding that disclosure. Thus, the MSPB determined that Petitioner's January disclosure was not protected and refused to order corrective action for it.

Before this Court, Petitioner does not challenge the MSPB's ruling regarding his April disclosure to the Inspector General; he appeals only the MSPB's ruling regarding his January disclosure to his supervisor. In so doing, he does not take issue with the MSPB's finding that his disclosure to his supervisor was made during his normal course of duties, nor does he dispute that he cannot prove a retaliatory motive. Instead, he argues that the MSPB erred by making *him* prove a retaliatory motive as a *prerequisite* before it would consider his disclosure to his supervisor to be protected. For a variety of different reasons, he contends that any inquiry into the existence of a retaliatory motive—if such a motive is even required under the WPEA—is instead "properly reserved for consideration *after* a protected disclosure is found" and that the burden is on the Department of Agriculture to prove that its officials *lacked* a retaliatory motive when they terminated him. Appellant's Br. 13 (emphasis added). He therefore asks us to set aside the MSPB's finding that he failed to make a protected disclosure, find that this disclosure *was* protected, and remand this case back to the MSPB for further proceedings.

But before we may determine whether we should do so, we have the *sua sponte* obligation to satisfy ourselves "not only of [our] own jurisdiction, but also

8

that of the lower courts," which, in this case, happens to be the MSPB, "even though the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks omitted). Generally, we would have jurisdiction to adjudicate Petitioner's appeal from the MSPB's final decision pursuant to 5 U.S.C. § 7703(b)(1)(B). If, however, the MSPB itself did not have jurisdiction to determine whether Petitioner was entitled to corrective action for his January disclosure, then we have jurisdiction "merely for the purpose of correcting the error of the lower court in entertaining the suit." *Steel Co.*, 523 U.S. at 95 (internal quotation marks omitted). And when reviewing whether the MSPB had jurisdiction, we are bound by the MSPB's jurisdictional factual findings "unless those findings are not supported by substantial evidence," but we review *de novo* the ultimate legal question whether the MSPB had jurisdiction to adjudicate an appeal. *Rosario-Fabregas v. Merit Sys. Protection Bd.*, 833 F.3d 1342, 1345 (Fed. Cir. 2016) (internal quotation marks omitted); *see also Waldau v. Merit Sys. Protection Bd.*, 19 F.3d 1395, 1398 (Fed. Cir. 1994) ("[W]e review *de novo* the question whether the MSPB has jurisdiction to adjudicate a case."); 5 U.S.C. § 7703(c).

What gives us pause is the MSPB's determination that Petitioner exhausted his administrative remedies before the OSC for his January disclosure to his supervisor. This exhaustion requirement is governed by 5 U.S.C. § 1214(a)(3) and states that, subject to an exception not applicable here, a federal employee "shall seek corrective action from the [Office of] Special Counsel before seeking corrective action from the [MSPB]." As the MSPB itself recognized, this requirement is jurisdictional in

9

nature. *Ellison*, 7 F.3d at 1037; *McCarthy v. Merit Sys. Protection Bd.*, 809 F.3d

1365, 1374 (Fed. Cir. 2016).[3]   And as the MSPB also recognized, § 1214(a)(3)

requires an employee to "give the Office of Special Counsel [a] sufficient basis to

[3] We are cognizant of recent Supreme Court cases that caution us to label a statutory rule as jurisdictional only when "Congress has 'clearly state[d]' that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (alteration in original) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)). We are equally cognizant that, for this very reason, our Court has of late cast doubt on whether exhaustion requirements in other statutes are actually jurisdictional. *See, e.g.*, *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 783–84 (10th Cir. 2013) (pausing to consider whether the exhaustion requirement of the Individuals with Disabilities Education Act (IDEA) should remain jurisdictional in light of the Supreme Court's recent remarks, but ultimately concluding that "for purposes of this case IDEA exhaustion's status as a jurisdictional prerequisite is not at issue"). We note that our Court has even explicitly held that some exhaustion requirements are now properly nonjurisdictional. *See, e.g.*, *Hull v. IRS, U.S. Dep't of Treasury*, 656 F.3d 1174, 1181–82 (10th Cir. 2011) (holding that the exhaustion requirement of the Freedom of Information Act (FOIA) is nonjurisdictional because the FOIA "does not unequivocally make" the exhaustion requirement jurisdictional (internal quotation marks omitted)).

That said, Congress has clearly indicated that the exhaustion requirement outlined in § 1214(a)(3) is jurisdictional.   The context of § 1214(a)(3) and its placement in the overall statutory scheme is instructive as to why. *See Auburn Reg'l*, 133 S. Ct. at 824 ("This is not to say that Congress must incant magic words in order to speak clearly [about jurisdiction].   We consider context . . . as probative of whether Congress intended a particular provision to rank as jurisdictional." (internal quotation marks omitted)).   First, consider that Congress explicitly stated that the MSPB shall "hear, adjudicate, or provide for the hearing or adjudication, of *all matters within the jurisdiction of the* [*MSPB*] under this title . . . ."   5 U.S.C. § 1204(a) (emphasis added).   The only matters within the jurisdiction of the MSPB, in turn, are those expressly made appealable to it "under any law, rule, or regulation." *Id.* § 7701(a).   Finally, one of the matters made appealable to the MSPB is cases wherein a federal employee alleges that he is entitled to corrective action for making whistleblowing disclosures, but an employee's ability to bring such a case is "[*s*]*ubject to the provisions of . . . subsection 1214(a)(3)*." *Id.* § 1221(a) (emphasis added).   Combining these statutes, it is thus clear that if a federal employee cannot satisfy the requirements of § 1214(a)(3)—that is, the exhaustion-of-remedies requirement—then his whistleblowing claim is not appealable to the MSPB under any law, rule, or regulation, which necessarily means that the MSPB does not have jurisdiction over his claim.

pursue an investigation which might have led to corrective action." *Serrao*, 95 F.3d at 1577; *see also id.* (noting that an employee must "articulate with reasonable clarity and precision [before OSC] the basis for his request for corrective action" (alteration in original) (internal quotation marks omitted)). Thus, when hearing an employee's appeal from the OSC, the MSPB's jurisdiction is "limited to those issues that have been previously raised with OSC." *McCarthy*, 809 F.3d at 1374 (internal quotation marks omitted).

Unlike the MSPB, we believe that Petitioner did not raise his January disclosure with the OSC in a way that would allow the OSC to sufficiently pursue an investigation. Even though Petitioner's complaint to the OSC undoubtedly included his April email to the Inspector General (which, in turn, discussed his January disclosure to his supervisor), this is not enough. Instead, the fact that he did not even attempt to allege in the complaint itself that he was terminated for making the January disclosure was fatal to the MSPB's jurisdiction.

For illustration, consider the decision in *McCarthy v. Merit Systems Protection Board*, where the Federal Circuit encountered an almost identical issue and ruled that the MSPB lacked jurisdiction. In that case, a federal employee submitted a report to the State Department's Office of the Inspector General in which he alleged that his employer was engaging in different types of fraud, waste, and abuse. *McCarthy*, 809 F.3d at 1368. Significantly, the employee specifically noted in the report that he had previously informed his supervisor of these instances of fraud, waste, and abuse via different legal memoranda he had drafted. *Id.* The employee was thereafter

11

terminated. *Id.* As is the case with Petitioner, the employee then filed a complaint with the OSC wherein he alleged *only* that his termination was because of the report he had submitted to the Inspector General—he did not allege that the legal memoranda he had drafted earlier contributed to his termination. *Id.* As is also the case with Petitioner, the employee's failure to allege that these legal memoranda contributed to his termination stemmed from the fact that these memoranda were made during the normal course of his duties, which, at the time, meant that he had absolutely no chance of receiving corrective action for them. *Id.*

The OSC refused to seek corrective action on the employee's behalf. *Id.* The employee sought corrective action from the MSPB, which initially affirmed the OSC's decision. *Id.* But afterward, Congress enacted the WPEA, and as a result the employee asked the MSPB to reopen his case based on the fact that he could now allege that the legal memoranda contributed to his termination. *Id.* at 1368–69. The MSPB refused to reopen his case and dismissed his appeal. *Id.* at 1369.

Upon review, the Federal Circuit affirmed the MSPB's decision on the grounds that the MSPB lacked jurisdiction to hear the employee's case because the employee had not exhausted his administrative remedies with the OSC. *Id.* at 1375. In pertinent part, the Federal Circuit stated the following:

> [The] OSC complaint only identifies [the employee's] . . . report to the [Inspector General] and a . . . disclosure to Congressman Reyes. *It makes no mention of his legal memoranda.* Given this, the OSC's "basis to pursue an investigation" was only these two disclosures and the circumstances surrounding them, such as whom these disclosures were made to, [his employer's] awareness of these disclosures, and how they related to the events that led to [his] termination. This did not provide the OSC with a

12

"sufficient basis to pursue an investigation" with respect to [his] legal memoranda—these were different disclosures, made to different people, at different times.

Moreover, the case that [he] presented to the OSC . . . substantially differs from the case he presents now. [Before the OSC, his] legal memoranda were not considered protected disclosures . . . ; *thus, the OSC would have had no basis to investigate the legal memoranda and develop findings related to these disclosures.* What [he] presents now is in essence a different case, and the OSC has not had an opportunity to "effectively pursue an investigation" with respect to these circumstances.

\*\*\*

[The employee] also argues that the exhaustion requirement only applies to the content of whistleblowing disclosures, and that existing case law does not require that he correctly affix legal labels to these facts. We agree that the focus of the exhaustion requirement is on substance; however, [he] has not satisfied this requirement here. . . . [T]*he core substance of* [*his*] *complaint has shifted from a single disclosure to the* [*Inspector General*] *(which, at best, was at least in part cumulative of a nebulous collection of previous disclosures) to four distinct legal memoranda provided to specific individuals at specific times.*

We find, then, that [the employee] has not exhausted his OSC remedies with respect to the legal memoranda.

*Id.* at 1374–75 (emphases added) (citations omitted).

Although we are not bound by Federal Circuit precedent, we find the *McCarthy* court's logic powerful and persuasive. We are not prepared to say that Petitioner exhausted his administrative remedies before the OSC regarding his January disclosure just because he discussed it as pertinent background information in his disclosure to the Inspector General. That was not enough for the *McCarthy* court—where, as stated above, the employee referenced in his report to the Inspector General previous disclosures he had made—and it is not enough for us. Indeed, and as the *McCarthy* court put it, the

13

"core substance" of Petitioner's complaint has "shifted from a single disclosure to the Inspector General" to a "distinct" disclosure that he provided to his supervisor three months earlier. This was a "different disclosure, made to [a] different [person], at [a] different time[]." The simple fact that the OSC *knew* about Petitioner's January disclosure would not have made it aware that it should have *investigated* whether he was terminated for making this disclosure when the complaint itself, like the complaint in *McCarthy*, "makes no mention" on its face of any other disclosures. *See Serrao*, 95 F.3d at 1577 ("[A]n employee [must] *articulate with reasonable clarity and precision* the basis for his request for corrective action." (emphasis added)).

The change in law brought about by the WPEA—protecting disclosures made during the normal course of duties—simply highlights and buttresses this conclusion. Because Petitioner's January disclosure could not have merited corrective action when he filed his complaint with the OSC, "the OSC would have had no basis to investigate the legal memoranda and develop findings related to these disclosures." Petitioner's case before the MSPB and our Court, therefore, "is in essence a different case," and the OSC is entitled to determine in the first instance whether it would like to pursue corrective action on his behalf for his January disclosure.

We adhere to our conclusion today even though we have previously recognized that exhaustion is not required "where it would be futile or fail to provide adequate relief." *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 874 (10th Cir. 2007) (internal quotation marks omitted); *see also Honig v. Doe*, 484 U.S. 305, 327 (1988) ("[E]xhaustion . . . should not be required . . . in cases where such

14

exhaustion would be futile either as a legal or practical matter." (omissions in original) (internal quotation marks omitted)).  To be sure, it would indeed have been futile for Petitioner to argue to the OSC that his January disclosure could merit corrective action—at the time, and as we have discussed, Petitioner would have undoubtedly lost on such an argument.  *McQueen*, 488 F.3d at 875 (holding that exhaustion is futile when "it is clear at the outset" that the administrative agency cannot grant any relief for the claim at issue).  That said, the Supreme Court has specifically informed us that courts are "not [to] read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"—that is, when "Congress has *mandated exhaustion.*"  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2000) (emphasis added); *see also Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 389 (7th Cir. 2000) ("Although we do not believe that the district court had the power to waive the statutorily-mandated exhaustion requirement of the APA, the plaintiffs have not demonstrated that the district court erred in applying administrative exhaustion even if we assume *arguendo* that the district court had the discretion to excuse that failure on the ground of futility." (citations omitted)); *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1327 (7th Cir. 1995) (distinguishing the flexible common law doctrine of administrative exhaustion with the "inflexible command of a statute").  And here, Congress has indeed mandated exhaustion via 5 U.S.C. § 1214(a)(3).  *See supra*.  We are therefore prohibited from applying the futility doctrine to Petitioner's claim that he was terminated for making his January disclosure to his supervisor.  He was strictly required to present this claim to the OSC first.

15

Nor is it significant that the MSPB held in *Day v. Department of Homeland Security* that the WPEA's new rules regarding disclosures made during the normal course of an employee's duties are retroactive. *Day*, 119 M.S.P.R. at 602. Questions of retroactivity and questions of jurisdiction are distinct. An employee must still exhaust his administrative remedies before the OSC for disclosures made during the normal course of duties before he can claim that the substantive change in law as enacted by the WPEA applies to those disclosures. Indeed, we note that even in *McCarthy* neither party "dispute[d] that the WPEA could be applied retroactively" and yet the Federal Circuit still found that the employee failed to exhaust his administrative remedies. *McCarthy*, 809 F.3d at 1369.

In conclusion, the MSPB lacked jurisdiction to consider whether Petitioner was terminated for disclosing the FAR violation to his supervisor in January. We therefore vacate the MSPB's decision insofar as it concluded that Petitioner's January disclosure was not a protected disclosure and remand this case back to the MSPB to dismiss that issue for lack of jurisdiction.[4] The MSPB's decision regarding his April disclosure to the Inspector General still stands.

---

[4] We note that Petitioner remains free to pursue a complaint with the OSC with respect to his January disclosure, "as there is no statutory time limit for filing a request for corrective action with the OSC." *McCarthy*, 809 F.3d at 1375 (citing *Augustine v. Dep't of Justice*, 50 M.S.P.R. 648, 652 (1991)).

16

VACATED IN PART and REMANDED for further proceedings consistent with this opinion.[5]

---

[5] The OSC filed an *amicus curiae* brief that argues the MSPB's decision should be reversed on the merits because Petitioner actually did *not* make his January disclosure during his "normal course of duties," and the Department of Agriculture filed a motion asking for leave to respond to the OSC's brief. But because both Petitioner and the Department of Agriculture have steadfastly assumed before the MSPB and our Court that the January disclosure was made in the normal course of duties, and because we vacate the MSPB's decision on jurisdictional grounds without deciding whether reversal is warranted on the merits, we decline to address the OSC's argument and express no opinion on it. The Department of Agriculture's motion asking for leave to file a response is accordingly denied as moot.