**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ERIKA D. WALKER,
                    Appellant,

            v.

DEPARTMENT OF THE ARMY,
                    Agency.

DOCKET NUMBER
DC-1221-21-0374-W-1

DATE: August 25, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

James R. Walker, Garden City, New York, for the appellant.

Randy Ramirez, Esquire, Fort Sam Houston, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2        On April 26, 2021, the appellant, a GS-12 Physician Assistant (Readiness), filed an appeal with the Board alleging that she had "suffered retaliation and disparate treatment as a direct result of making a protected disclosure and/or reporting protected activity that she reasonably believed evidenced wrongdoing." Initial Appeal File (IAF), Tab 1 at 8-9, Tab 13 at 42. The appellant requested a hearing on the matter. IAF, Tab 1 at 2. The administrative judge thereafter issued an order wherein he explained the circumstances under which the Board has jurisdiction to adjudicate IRA appeals, and he ordered her to file specific evidence and argument regarding jurisdiction. IAF, Tab 3 at 1-9.

¶3        In response, the appellant asserted that, in February 2020, she disclosed to various agency personnel that a specific agency nurse had "allowed double using of vacutainer adapters in the lab when processing . . . armed forces personnel" patients.[2] IAF, Tab 9 at 5, Tab 13 at 13-20. She alleged that, despite her disclosure, no action was taken against the nurse because the nurse had a personal relationship with an agency management official. IAF, Tab 9 at 6-7. She also alleged that, following her disclosure, on April 29, 2020, the agency rated her as "fully successful" in lieu of "outstanding" in the "administrative responsibilities and committee membership" element of her performance appraisal. IAF, Tab 9 at 7, Tab 13 at 42, 45, 48. The appellant also alleged the following: (1) on May 15, 2020, an agency management official purposefully excluded her from a meeting regarding a topic for which she was the subject matter expert; (2) in

---

[2] A "vacutainer" is a "proprietary blood collection tube with a vacuum [used] to facilitate blood collection." The Free Dictionary, Medical Dictionary, https://medical-dictionary.thefreedictionary.com/ Vacutainer (last visited Aug. 25, 2022); IAF, Tab 13 at 14. A "vacutainer adapter" facilitates the use of a vacutainer during a blood draw but does not come in direct contact with the skin. IAF, Tab 13 at 14.

October/November 2020, an agency management official attempted to make her the subject of an investigation in an attempt to remove her from her job duties; (3) in May 2020, she was assigned a new supervisor who began to micromanage her and enact a series of changes, to include removing some of her supervisory responsibilities, informing her that she had certain responsibilities only "on paper," and "intending to micromanage and negatively impact" her duties with the U.S. Army Reserves. IAF, Tab 9 at 7-9, Tab 13 at 4-8. With her filings, the appellant provided a copy of a February 18, 2021 close-out letter from the Office of Special Counsel (OSC). IAF, Tab 9 at 12-13. In this letter, OSC indicated that it was terminating its inquiry into the appellant's allegations that agency officials had given her a rating of "3" on a performance evaluation,[3] failed to provide her with meaningful supervisory responsibilities, and significantly changed her duties and working conditions after she emailed agency supervisors regarding an incident involving a nurse's improper use of medical equipment. *Id.* at 12.

¶4      Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 15, Initial Decision (ID) at 1, 7. In so doing, the administrative judge reasoned that the appellant had identified five potential personnel actions: (1) the agency's purported failure to discipline another employee; (2) the agency having rated appellant as "fully successful" in lieu of "outstanding" in one element of her performance appraisal[4]; (3) the agency changing the appellant's duties and job title; (4) the agency initiating an investigation into the appellant; and (5) the agency attempting to influence the appellant's duties with the U.S. Army Reserves. ID at 4-7. He concluded, however, that none of these alleged actions

---

[3] Documentation provided by the appellant indicated that a rating of "3" equates to "fully successful." IAF, Tab 13 at 45.

[4] The initial decision erroneously indicated that the appellant received the subject rating in 2018 in lieu of in 2020. ID at 5.

amounted to "colorable personnel actions for which corrective action could be granted" and, therefore, that the Board lacks jurisdiction over the matter.  ID at 7.

¶5    The appellant has filed a petition for review, and the agency has filed a response.  Petition for Review File, Tabs 1, 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6    To establish jurisdiction in a typical IRA appeal, an appellant must show by preponderant evidence[5] that she exhausted her remedies before OSC and make nonfrivolous allegations of the following:  (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016).  A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue.  5 C.F.R. § 1201.4(s).  The U.S. Court of Appeals for the Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020).  Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of affording the appellant a hearing.  *Grimes v. Department of the Navy*, 96 M.S.P.R. 595, ¶ 12 (2004).

¶7    For the following reasons, we disagree with the administrative judge's conclusion that the appellant failed to establish Board jurisdiction and we remand the matter for adjudication of the merits.

---

[5] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

The appellant exhausted her administrative remedies before OSC.

¶8    An appellant must exhaust her administrative remedies by first seeking corrective action from OSC before seeking corrective action from the Board in an IRA appeal.  5 U.S.C. § 1214(a)(3).  The appellant must provide OSC with a sufficient basis to pursue an investigation into a whistleblower reprisal claim. *E.g.*, *Mount v. Department of Homeland Security*, 937 F.3d 37, 47-48 (1st Cir. 2019); *Acha v. Department of Agriculture*, 841 F.3d 878, 883-84 (10th Cir. 2016); *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992); *Tuten v. Department of Justice*, 104 M.S.P.R. 271, ¶ 5 (2006), *aff'd*, No. 2007-3145, 2007 WL 2914787 (Fed. Cir. Oct. 5, 2007).  However, an appellant is not prohibited from providing a more detailed account before the Board than she did to OSC.  *Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1377-78 (Fed. Cir. 2001); *see Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 924-26 (7th Cir. 2018).  An appellant may demonstrate exhaustion through, among other things, her initial OSC complaint or correspondence from OSC.  *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011).

¶9    OSC's close-out letter in this matter reflects that the appellant alleged to OSC that agency officials issued her a rating of 3 on her performance evaluation, failed to provide her with meaningful supervisory responsibilities, and significantly changed her duties and working conditions after she emailed supervisors about an incident involving a nurse's improper use of medical equipment.  IAF, Tab 9 at 12.  Thus, we find that the appellant has exhausted her administrative remedies regarding the allegations we discuss in more detail below.

The appellant made a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶10    The appellant alleged that, in February 2020, she disclosed to various agency personnel that an agency nurse improperly permitted agency employees to

reuse vacutainer adapters in a laboratory setting. IAF, Tab 9 at 5, Tab 13 at 4. The appellant also provided to the administrative judge a copy of an email dated February 12, 2020, wherein she informed numerous agency employees that "single-use vacutainer adapters" had improperly been reused by medics conducting blood draws on "over 100 [s]oldiers." IAF, Tab 13 at 13, 16. In these emails, the appellant identified a particular nurse as having erroneously informed agency employees that such reuse was permissible. *Id.* The appellant also provided subsequent emails sent amongst agency personnel discussing whether the reuse of the adaptors had posed a health risk to both patients and staff, including an email wherein an agency specialist indicated that "[t]he risk is clearly higher for the healthcare worker" and, although the cross-contamination risk for the patient was "very low," it was "not zero." *Id.* at 14.

¶11      A protected disclosure is one that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Id.*, ¶ 5.

¶12      We find the appellant made a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8). Indeed, a disinterested observer could reasonably conclude that the matters disclosed by the appellant, through her February 12, 2020 email regarding vacutainer adapter reuse, disclosed a substantial and specific danger to public health and safety. *See Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 19-20 (2013) (concluding that an appellant's disclosure that medical carts were not properly cleaned and restocked constituted a protected disclosure of a substantial and specific danger to

public health and safety); *see also Smith v. Department of Agriculture*, 64 M.S.P.R. 46, 52-54 (1994) (concluding that the appellant had made a protected disclosure when he informed the Occupational Safety and Health Administration that he believed agency employees were using inappropriate safety equipment in a laboratory setting).

### The appellant made a nonfrivolous allegation of a personnel action insofar as she alleged that the agency lowered her performance rating in one element.

¶13　　The definition of "personnel action" includes a performance evaluation. 5 U.S.C. § 2302(a)(2)(A)(viii).  The administrative judge considered whether the appellant's claim that the agency had lowered her performance rating to "fully successful" in lieu of "outstanding" in one element of her performance appraisal constituted a personnel action.  ID at 5-6.  He found, however, that it did not because the Board "has traditionally looked to the overall performance evaluation as the relevant personnel action for purposes of an IRA appeal."  ID at 5.  He reasoned that, despite the appellant's lower rating in the subject element, her "overall performance evaluation was rated as outstanding, the highest level."  *Id.* He concluded that "advancing a challenge to a superlative rating of outstanding [would be] facially inconsistent with the remedial purposes of the Whistleblower Protection Act, which is designed to encourage employees to pursue remedies for alleged wrongdoing and discourage employing agencies from taking such actions, thus enhancing good government."  *Id.*  We disagree.

¶14　　The statutory provision identifying a performance evaluation as a personnel action, i.e., 5 U.S.C. § 2302(a)(2)(A)(viii), contains no qualifying language requiring that the contested performance evaluation have a less-than-superlative overall rating.  *See Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 16 (2013) (reasoning that the administrative judge had erred in finding that the appellant's 2008 performance appraisal did not constitute a personnel action when the appellant received the same rating as she had in 2007 because the statutory language did not contain any qualifying language requiring that an appellant's

rating decline in order to constitute a personnel action). Moreover, we disagree with the administrative judge's conclusion that challenging an undesirable rating in a single element of an employee's formal performance evaluation is contrary to the remedial purposes of the statute; indeed, such a rating could have practical consequences for an employee. *See Keefer v. Department of Agriculture*, 82 M.S.P.R. 687, ¶ 13 (1999) (explaining that the Whistleblower Protection Act is a remedial statute intended to improve protections for Federal employees and should be construed to effectuate that purpose). For instance, were the appellant to apply for a promotion or for another position altogether, she could conceivably be competing against another candidate or candidates with an "outstanding" rating in all elements and, therefore, be placed at a disadvantage. Accordingly, we find that the appellant made a nonfrivolous of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii).

The appellant made a nonfrivolous allegation of a personnel action insofar as she made a nonfrivolous allegation that the agency significantly changed her working conditions.

¶15     The definition of "personnel action" also includes a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The administrative judge considered whether the appellant's allegations amounted to such a personnel action but concluded that they did not because the record was devoid of sufficient "elaboration or explanation" as to how the agency's alleged actions constituted significant changes in duties or working conditions. ID at 6. We disagree.

¶16     The Board has found that, although "significant change" should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical consequence for an appellant constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16. To this

end, the agency actions must have a significant effect on the overall nature and quality of the appellant's working conditions, duties, or responsibilities. *Id.*

¶17         Here, the appellant alleged that, in May 2020, approximately 3 months after her disclosure regarding adapter reuse, she was purposefully excluded from a meeting regarding medical readiness, which is her area of expertise. IAF, Tab 9 at 7. She also alleged that, during this same timeframe, she was assigned a new supervisor. *Id.* at 8. She asserted that, although her position required her to serve as the Chief of Soldier Medical Readiness, her new supervisor informed her that she was "chief on paper" only and began to micromanage her by requiring her to place "all task [sic] on a calendar and shared [sic] with the group," and precluded her from supervising the nurse who was the subject of her disclosure.[6] *Id.* at 7-8. We find that these contentions collectively amount to a nonfrivolous allegation of a significant change in working conditions. *See Skarada*, 2022 MSPB 17, ¶¶ 17-18 (concluding that the appellant made a nonfrivolous allegation that the agency had subjected him to a significant change in duties, responsibilities, or working conditions when he alleged, among other things, that supervisory personnel both directed him to stop attending leadership meetings and performing certain extra duties and subjected him to multiple investigations).

---

[6] The appellant also alleged that the agency had, in retaliation for her disclosure, (1) subjected her to an investigation, and (2) interfered with her duties with the U.S. Army Reserves. IAF, Tab 9 at 7-9. Although a retaliatory investigation is not specified in the definition of "personnel action" at 5 U.S.C. § 2302(a)(2)(A), such an investigation might contribute towards a significant change in working conditions as defined at 5 U.S.C. § 2302(a)(2)(A)(xii). *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020); *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 10. Thus, on remand, the administrative judge shall consider the appellant's investigation-related allegations in assessing the subject personnel action. Moreover, although the nature of the appellant's claims regarding her duties with the U.S. Army Reserves is unclear, to the extent any purported interference impacted the appellant's civilian Federal employment, such interference could similarly contribute towards a significant change in her working conditions.

<u>The appellant satisfied the contributing factor jurisdictional criterion via the knowledge/timing test.</u>

¶18    An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way to satisfy the contributing factor criterion is the knowledge/timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Under this test, an appellant can prove the contributing factor element through evidence showing that the official taking the personnel action knew of her protected disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*; *see* 5 U.S.C. § 1221(e)(1).

¶19    We find that the appellant made nonfrivolous allegations that, if proven, would satisfy the contributing factor criterion via the knowledge/timing test. As set forth above, she alleged that, on February 12, 2020, she made a protected disclosure via email to numerous agency management officials, including a management official with whom the subject nurse had a "personal relationship." IAF, Tab 9 at 5. She alleged that this official was the individual who sought to exclude her from a May 2020 meeting. *Id.* at 7. She also alleged that this official "briefed" the supervisor to whom she was reassigned in May 2020. *Id.* at 8. She further asserted that this official, along with another official to whom she sent the subject email, attempted to make her "the subject of an [i]nvestigation" in an effort to thwart her from performing her job duties. *Id.* at 7-8. Moreover, the appellant submitted documents reflecting that both the rating official and the higher-level reviewer of the appellant's April 29, 2020 "rating of record" were recipients of the appellant's February 12, 2020 email. IAF, Tab 13 at 13, 42. Insofar as the appellant has nonfrivolously alleged both (1) a close temporal proximity, i.e., approximately 3 months, between her protected disclosure and the two personnel actions at issue, and (2) that the relevant agency management

officials had knowledge of the same, we find that she met her burden at this jurisdictional stage regarding the contributing factor element. *See Wadhwa*, 110 M.S.P.R. 615, ¶ 12 (explaining that, if an appellant satisfies the knowledge/timing test, the appellant has demonstrated that a protected disclosure was a contributing factor in a personnel action); *see also Berkowitz v. Department of the Treasury*, 94 M.S.P.R. 658, ¶ 12 (2003) (finding that the appellant made a nonfrivolous allegation that the disclosure was a contributing factor in a personnel action that occurred only 5 months after the disclosure).

¶20        Accordingly, we find that the appellant made a nonfrivolous allegation that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) that contributed to both (1) her April 29, 2020 performance evaluation and (2) a significant change in her duties, responsibilities, or working conditions. Thus, we find that she is entitled to her requested hearing and a decision on the merits of her appeal. IAF, Tab 1 at 2; *see Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Prior to conducting a hearing, the administrative judge shall afford the parties a reasonable opportunity to complete discovery and order the parties to submit any other evidence that he deems necessary to adjudicate the merits of this appeal. *See Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 14 (2016).

## ORDER

¶21        For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                                   /s/ for
                                                 _____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.