**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 19-2343**

───────────────

ROBERT F. ZACHARIASIEWICZ,

　　　　　Plaintiff - Appellant,

　　　v.

U.S. DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, U.S. Attorney General,

　　　　　Defendants - Appellees,

─────────────────

ANDREA R. BUTLER,

　　　　　Court-Assigned Amicus Counsel.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Rossie David Alston, Jr., District Judge.  (1:19-cv-00055-RDA-JFA)

───────────────

Argued:  May 5, 2022　　　　　　　　　　　Decided:  August 31, 2022

───────────────

Before GREGORY, Chief Judge, and DIAZ, and THACKER, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Thacker wrote the opinion, in which Chief Judge Gregory joined.  Judge Diaz wrote a dissenting opinion.

───────────────

**ARGUED:** Andrea R. Butler, KIRKLAND & ELLIS, LLP, Washington, D.C., for Court-Assigned Amicus Counsel. Laura Day (Rottenborn) Taylor, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees. **ON BRIEF:** Matthew D. Rowen, KIRKLAND & ELLIS LLP Washington, D.C., for Amicus Curiae. Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

---

2

THACKER, Circuit Judge:

Robert F. Zachariasiewicz, Jr. ("Appellant") challenges the district court's dismissal of his complaint -- which alleges whistleblower protection and discrimination claims relative to his employment at the federal Drug Enforcement Agency (the "DEA" or the "Agency") -- for lack of subject matter jurisdiction. We conclude that the district court correctly held that it lacked subject matter jurisdiction to consider the whistleblower protection claims, and we affirm the district court's dismissal of those claims. However, we remand this case to the district court so that it may consider in the first instance whether it possesses subject matter jurisdiction to adjudicate the merits of Appellant's discrimination claims.

I.

A.

Factual Background

1.

Appellant began his career at the DEA as a Special Agent in January 1998. He enjoyed early success and was rapidly promoted during his first few years at the Agency. In July 2010, Appellant was selected for a supervisory position, at classification level GS-14,[1] and was assigned to work as a Staff Coordinator in the Latin America and Caribbean

---

[1] "The General Schedule (GS) classification and pay system covers the majority of civilian white-collar Federal employees . . . in professional, technical, administrative, and clerical positions. . . . The General Schedule has 15 grades -- GS-1 (lowest) to GS-15 (highest). Agencies establish (classify) the grade of each job based on the level of difficulty, responsibility, and qualifications required." U.S. Off. of Pers. Mgmt., General (Continued)

Section of the Special Operations Division (the "SOD") at DEA Headquarters. And in 2013, Appellant became the Group Supervisor of the Latin America Group of the SOD's Bilateral Investigations Unit ("BIU"), an elite unit within the DEA. The Group Supervisor position was perceived as a pathway to career advancement in senior management at the Agency.

With the encouragement of his supervisors, Appellant sought to be promoted to a position at the GS-15 classification level. Such a position -- Assistant Special-Agent-in-Charge ("ASAC") for the SOD -- became available in July 2015. Appellant believed that the DEA was required to competitively advertise the position and fill it according to an objective selection process. However, the ASAC for the SOD vacancy was never advertised, and Appellant later learned that the position was filled by a lateral transfer.

Shortly afterward, in August 2015, Appellant complained to his supervisors that the way the Agency had filled the vacancy violated federal law. In response to his complaints, Appellant was informed that he was not eligible for promotion within the SOD. This substantially decreased the likelihood that Appellant would receive a promotion because the DEA generally promotes its employees from within the same office, section, or unit.

2.

Several months later, in January 2016, the DEA instituted a policy to involuntarily transfer Staff Coordinator employees from the SOD. Although Appellant was initially

---

Schedule Overview, OPM.gov, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ (last visited June 27, 2022).

advised that the policy did not apply to him because he was not employed as a Staff Coordinator, he was later informed that he would be re-assigned to DEA Headquarters pursuant to the policy. Appellant was the only non-Staff Coordinator employee to be involuntarily transferred as a result of the policy.

According to Appellant, an involuntary transfer is perceived negatively within the DEA, and an involuntary transfer to DEA Headquarters -- after the employee has already completed a required three-year stint at DEA Headquarters -- is perceived as evidence of poor job performance and/or improper conduct. In other words, Appellant alleges, the involuntary transfer to DEA Headquarters was effectively a demotion that decreased his opportunity for further promotion.

Appellant protested his impending re-assignment to senior management, arguing that the involuntary transfer policy violated federal law. Nonetheless, Appellant was directed to complete paperwork related to the reassignment. His supervisor also told him that if he continued to object, he could be involuntarily transferred to an undesirable location. Appellant submitted the paperwork in February 2016 and noted that he should not be subject to the policy because he had already served his required time at DEA Headquarters and because he worked as a Group Supervisor, not a Staff Coordinator.

That same month, in response to Appellant's objections, the DEA's Chief of Operations -- the architect of the involuntary transfer policy -- held a meeting with the BIU Group Supervisors, including Appellant. During the meeting, Appellant and the other Group Supervisors expressed concern that the policy would negatively impact the BIU's operations. But the DEA did not reverse course. Appellant continued to protest the policy,

and he even complained about it to the United States Attorney's Office for the Southern District of New York. As a result of pressure from the United States Attorney, the DEA discontinued the involuntary transfer policy in August 2016.

Nonetheless, despite this reversal of course, Appellant was re-assigned to another Group Supervisor position in a different office on August 16, 2016. According to Appellant, he was the only Group Supervisor who was not subject to disciplinary proceedings at the time of his involuntary transfer, but the re-assignment suggested that he was a problem employee.

3.

Meanwhile, between November 2015 and January 2016, Appellant applied for four positions at the GS-15 classification level within the SOD but was not selected for any of them despite ranking among the best qualified candidates. Appellant suspected that he was being "blacklisted" at the Agency and precluded from further career advancement. J.A. 32.[2] In January 2016, Appellant complained to several individuals at the Agency that his being prohibited from consideration for a promotion violated federal law, but he was advised to "keep [his] bag shut" or face retaliation because he "would effectively have a 'bulls-eye on his back.'" *Id.* at 34–35. According to Appellant, the DEA directed supervisors not to list him among their recommended candidates to receive a promotion. In February 2016, Appellant's supervisor confirmed that Appellant was not eligible for a

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

promotion and advised Appellant that he would not recommend Appellant due to his own fear of retaliation by more senior management.

Appellant nevertheless continued to apply for promotions, submitting 13 applications for GS-15 positions at DEA Headquarters between March and June 2016. Again, Appellant ranked among the best qualified candidates for each position but was not selected for any of them. Appellant applied for and was rejected from several more positions -- despite ranking among the best qualified candidates -- between August 2016 and July 2017. In February 2017, Appellant's supervisor informed him that his involvement in the reversal of the involuntary transfer policy had offended senior management at the DEA. According to Appellant, senior management prevented him from receiving a promotion by removing his name from the list of recommended candidates for nine of the positions for which he applied.

In June 2017, Appellant applied for another ASAC vacancy, and this time, he was identified as the most highly qualified candidate. Agency custom generally guaranteed that the highest-ranked candidate would be awarded the position. However, at the behest of the DEA's Chief of Operations, an African American female was selected due to "diversity." J.A. 40. Indeed, Appellant was later informed by the Acting Deputy Administrator of the DEA that he was rejected because of his race and sex.

B.

Agency Proceedings

On September 15, 2017, three days after he was notified that he was not selected for the ASAC position, Appellant lodged a discrimination complaint with the DEA's Equal

7

Employment Office ("EEO"). However, Appellant withdrew his EEO complaint shortly afterward based on his belief that he could instead elect to proceed before the Merit Systems Protection Board (the "MSPB").

Appellant filed his first MSPB appeal[3] on October 3, 2017. He initially alleged race and sex discrimination in relation to his rejection for the ASAC position. Appellant later asserted whistleblower protection claims stemming from his rejection for the other positions for which he applied between November 2015 and July 2017. On November 1, 2017, Appellant also filed a complaint raising the whistleblower protection claims with the Office of Special Counsel (the "OSC"). Less than two weeks later, before the OSC addressed the complaint, an administrative judge ("AJ") dismissed the MSPB appeal for lack of jurisdiction because Appellant had not pursued his whistleblower protection claims before the OSC and because the MSPB could not exercise independent jurisdiction over the discrimination claims.

On December 19, 2017, while the OSC complaint remained pending, Appellant filed a second MSPB appeal. He asserted the same discrimination and whistleblower protection claims that he had raised in his first MSPB appeal. The AJ assigned to the second MSPB appeal again questioned the MSPB's jurisdiction because Appellant had not exhausted his whistleblower protection claims before the OSC. As a result, on January 5,

---

[3] When a federal employee challenges a personnel decision made by his employing agency, that proceeding falls within the MSPB's appellate jurisdiction. *See* 5 C.F.R. § 1201.3. Accordingly, the proceeding is known as an "appeal." *See id.* § 1201.4(f) (defining "appeal" as "[a] request for review of an agency action").

2018, Appellant requested to withdraw his second MSPB appeal. The AJ dismissed the appeal on January 30, 2018, and gave Appellant 180 days to re-file it.

A little over a month later, Appellant received a letter from the OSC dated March 7, 2018, notifying him that he was eligible to file an "individual right of action" ("IRA") appeal with the MSPB. The letter also referenced a second letter informing Appellant that his OSC complaint was terminated because he had elected to proceed before the MSPB.

In the meantime, Appellant continued to apply for positions at the GS-15 level. He applied for 11 such positions between December 2017 and February 2018, but he was not selected for any of them, despite being informed during one of his interviews that he was the most qualified candidate for the position.

Based on the March 7, 2018 letter from the OSC, Appellant filed a third appeal with the MSPB on May 24, 2018. He asserted the discrimination and whistleblower protection claims he had raised in his two previous appeals, but he also included new whistleblower protection claims that were not included in his initial OSC complaint. On October 17, 2018, upon the DEA's motion, the AJ dismissed for lack of jurisdiction Appellant's discrimination claims he had previously appealed as well as the whistleblower protection claims he had not previously pursued before the OSC. The parties proceeded to conduct discovery on the remaining claims. However, on November 28, 2018, Appellant informed the AJ that he intended to file suit in federal district court -- ostensibly because he believed that 5 U.S.C. § 7702(e)(1)(B) permitted him to effectively end his MSPB appeal and instead file a civil action because more than 120 days had passed since he had filed his third MSPB appeal but the MSPB had yet to issue a final decision. Appellant asked the AJ

9

to either stay the proceedings or dismiss the remaining claims without prejudice.  The AJ granted Appellant's request and dismissed the appeal two days later.

## C.

### District Court Proceedings

On January 11, 2019, Appellant sued the United States Department of Justice and the United States Attorney General (collectively, "Appellees") in federal district court.  In the operative complaint, he alleges retaliation claims pursuant to the Whistleblower Protection Act ("WPA") stemming from his August 2016 involuntary transfer, his failure to receive any of the GS-15 salary level positions for which he applied, the complaint he filed with the OSC, and the hostile work environment he argues the Agency created when it did not promote him.  He also alleges race and gender discrimination claims pursuant to Title VII of the Civil Rights Act ("Title VII") and additional retaliation and hostile work environment claims based on his EEO complaint.  Lastly, Appellant alleges that the DEA's policies precluding him from promotions constitute unlawful employment practices in violation of Office of Personnel Management regulations and prohibited personnel practices in violation of the Civil Service Reform Act ("CSRA").

Appellees moved to dismiss the action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion on August 7, 2019, and dismissed the action for lack of subject matter jurisdiction.  The district court held that only actions within the MSPB's "original jurisdiction" are appealable to federal district court and determined that

10

Appellant's failure to receive any of the promotions for which he applied did not qualify. *Zachariasiewicz v. U.S. Dep't of Just.*, 395 F. Supp. 3d 734, 739 (E.D. Va. 2019) (emphasis deleted).

On September 26, 2019, the district court summarily denied Appellant's Federal Rule of Civil Procedure 59(e) motion for reconsideration of its prior order dismissing the action. Appellant filed a notice of appeal on November 25, 2019.

## II.

"On appeal from a Rule 12(b)(1) motion to dismiss, we review a district court's factual findings relating to jurisdiction for clear error and the resulting legal conclusion de novo." *Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F.4th 422, 428 (4th Cir. 2021). In doing so, we review de novo the district court's interpretation of the governing statutes and regulations. *McAdams v. Robinson*, 26 F.4th 149, 155 (4th Cir. 2022).

## III.

## A.

## 1.

The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). It "prescribes in great detail the protections and remedies applicable to such action[s], including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988).

Pursuant to the CSRA, an employee may appeal a "major personnel action[], such as termination," directly to the MSPB, and if he "does not prevail before the MSPB, [he]

may seek judicial review in the Federal Circuit." *Fleming v. Spencer*, 718 F. App'x 185, 186 (4th Cir. 2018) (per curiam) (first citing 5 U.S.C. § 7513(d); and then citing 5 U.S.C. § 7703).    To challenge other, "[l]ess serious" personnel actions that violate certain "prohibited personnel practices," the employee must first file a complaint in the OSC before proceeding to the MSPB. *Id.*; *see* 5 U.S.C. § 1214(a)(3).  He may then seek judicial review of the MSPB's decision in the Federal Circuit.  5 U.S.C. § 7703(b)(1)(A).  But "[i]f the OSC decides not to pursue the complaint, the CSRA does not provide for any further administrative or judicial review." *Fleming*, 718 F. App'x at 187.

Allegations of conduct that is prohibited by the WPA generally fall within the latter category of personnel actions that must be pursued before the OSC prior to the MSPB.  *See* 5 U.S.C. §§ 1221(a), 1214(a)(3).  However, even if the OSC does not act on a complaint alleging a WPA claim, the employee may "seek corrective action from the [MSPB]" via an IRA appeal. *Id.* § 1221(a).  The employee is then entitled to seek judicial review of the MSPB's decision on a WPA claim either in the Federal Circuit or in "any court of appeals of competent jurisdiction." *Id.* § 7703(b)(1)(B).

2.

By contrast, when a federal employee alleges unlawful discrimination prohibited by another federal statute aside from the CSRA -- such as race or sex discrimination in violation of Title VII -- he must first file a complaint with the agency by which he is employed. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc) (citing 29 C.F.R. § 1614.106).  If the agency's decision is unfavorable, the employee has two options: he may appeal the decision to the Equal Employment Opportunity Commission ("EEOC"),

12

then seek judicial review of an unfavorable decision by the EEOC in federal district court, or he may forgo the appeal to the EEOC and file suit in federal district court. *Id.* at 416 & n.9.

The CSRA permits an employee who "has been affected by an action which [he] may appeal to the [MSPB]" and alleges that unlawful discrimination was a basis for that action to bypass the agency review process and proceed before the MSPB instead. 5 U.S.C. § 7702(a); *see Kloeckner*, 568 U.S. at 45. A claim that meets these criteria is known as a "mixed case." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1980 (2017) (first quoting *Kloeckner*, 568 U.S. at 44; and then citing 29 U.S.C. § 1614.302(a)(2)). If the MSPB denies relief in a mixed case, the employee may seek judicial review of the MSPB's decision in federal district court. *Kloeckner*, 568 U.S. at 50; *see* 5 U.S.C. § 7703(b)(2).

### B.

In this case, Appellant purports to challenge as a mixed case the DEA's failure to select him for any of the GS-15 positions for which he applied. He alleges that the Agency's conduct is the result of retaliation against him for his whistleblower complaints and of unlawful race and gender discrimination. He further argues that since the IRA appeal he obtained after pursuing his WPA claims with the OSC allows him to proceed before the MSPB, it can serve as the basis for a mixed case when combined with his discrimination claims.

The district court held that it lacked subject matter jurisdiction over this action because Appellant has not, in fact, brought a mixed case. Specifically, the district court concluded that a mixed case can include only those "serious" personnel actions enumerated

13

in 5 U.S.C. § 7512 that fall within the MSPB's "original jurisdiction." *Zachariasiewicz v. U.S. Dep't of Just.*, 395 F. Supp. 3d 734, 739 (E.D. Va. 2019) (emphasis deleted). We agree with the district court that only those personnel actions that an employee can challenge before the MSPB in the first instance can serve as the basis for a mixed case.

1.

As in all cases involving statutory interpretation, "we begin our analysis with the text of the governing statute." *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021) (alteration omitted) (quoting *Copley v. United States*, 959 F.3d 118, 123 (4th Cir. 2020)). Pursuant to 5 U.S.C. § 7702(a)(1), an employee who both "has been affected by an action which [he] may appeal to the [MSPB]" and "alleges that a basis for the action was discrimination prohibited by" certain enumerated federal laws, including Title VII, is entitled to bring a mixed case. Appellant argues that "an action which [an] employee may appeal to the [MSPB]," as used in § 7702(a)(1)(A), includes the personnel action that is the subject of an IRA appeal, as an IRA appeal gives the employee the right to proceed before the MSPB.

Although Appellant's reading of the text of § 7702(a)(1)(A) appears straightforward at first glance, the Supreme Court's and our case law as well as the governing statutory and regulatory scheme demonstrate that Appellant's reading is incorrect. This guidance from prior cases and the mechanics of the CSRA compel us to conclude that the personnel action giving rise to an IRA appeal cannot form the core of a mixed case because that personnel action is not directly appealable to the MSPB and instead must be challenged with the OSC prior to the MSPB.

14

2.

First and foremost, binding precedent dealing with the CSRA and with mixed cases does not permit us to interpret § 7702(a)(1)(A) to include IRA appeals. The manner in which these cases have described the CSRA's processes clearly distinguishes between personnel actions that are *directly* appealable to the MSPB, on the one hand, and those that are not, on the other. For instance, in *Kloeckner v. Solis*, the Supreme Court explained,

> If (but only if) the action is particularly serious -- involving, for example, a removal from employment or a reduction in grade or pay -- the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes. . . . When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said . . . to have brought a "mixed case."

568 U.S. at 44 (emphasis in original). The Court observed that the applicable regulations "set out special procedures to govern such a case -- different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory." *Id.* at 45. The Court described those procedures:

> A federal employee bringing a mixed case may proceed in a variety of ways. She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do. If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court. Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges. If the MSPB upholds the personnel action (whether in the first instance or after the agency has

15

> done so), the employee again has a choice:  She may request additional administrative process, this time with the EEOC, or else she may seek judicial review.

*Id.* (internal citations omitted).  Appellant's argument that an IRA appeal could form the basis of a mixed case is at odds with the Supreme Court's description of how an employee can bring a mixed case.  Specifically, the Supreme Court has said that the employee "may initiate the process by bringing [his] case directly to the MSPB."  *Id.*  But the claim that begins an IRA appeal cannot be brought "directly to the MSPB" because the employee must first pursue it before the OSC.  5 U.S.C. § 1214(a)(3) ("Except in a case in which an employee . . . has the right to appeal directly to the [MSPB] under any law, rule, or regulation, any such employee . . . shall seek corrective action from the [OSC] before seeking corrective action from the [MSPB].").

Further, in *Bonds v. Leavitt*, which was decided prior to *Kloeckner*, we explained that the CSRA

> governs the adjudication of "mixed case complaints," meaning complaints alleging "employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the" MSPB. Actions that can be appealed to the MSPB include, *inter alia*, removal from federal service, including retaliatory termination for protected whistle-blower activity.

629 F.3d 369, 378 (4th Cir. 2011) (internal citations omitted).  Appellant argues that our citation to 5 U.S.C. § 1214(a)(3) following the second sentence of this passage endorses his assertion that an IRA appeal can serve as the basis for a mixed case.  But Appellant

16

disregards the fact that the plaintiff employee in *Bonds* alleged that she was *terminated* from her federal employment in part due to her protected whistleblower activity. *See id.* at 377 (stating that employee's agency "accepted [her] complaint as a 'mixed-case complaint of discrimination' because it contained discrimination claims and her 'allegation (removal from the Federal Service) stems from an action that may be appealed to the [MSPB]"). "[A] removal" is one of the five personnel actions enumerated in 5 U.S.C. § 7512 that entitle the aggrieved employee to seek direct review by the MSPB. *See* 5 U.S.C. § 7513(d). And as we recognized in *Bonds*, this is true even if the employee alleges that her termination resulted from whistleblower reprisal: 5 U.S.C. § 1214(a)(3) exempts those personnel actions that are directly appealable to the MSPB from its requirement that the employee first pursue her complaint in the OSC. *See also* 5 U.S.C. § 1221(b) ("This section may not be construed to prohibit any employee . . . from seeking corrective action from the [MSPB] before seeking corrective action from the [OSC], if such employee . . . has the right to appeal directly to the [MSPB] under any law, rule, or regulation.").

In any event, our description of the prosecution of a mixed case in *Bonds* tracks the Supreme Court's explanation of the process in *Kloeckner*:

> At the outset, the aggrieved party can choose between filing a "mixed case complaint" with her agency's EEO office and filing a "mixed case appeal" directly with the MSPB. By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action. Should she elect the agency EEO route, within thirty days of a final decision she can file an appeal with the MSPB or a civil discrimination action in federal district court. If 120 days pass without a final decision from the

17

agency's EEO office, the same avenues of appeal again become available: the complainant can file either a mixed case appeal with the MSPB or a civil action in district court.

*Bonds*, 629 F.3d at 378 (internal citations omitted) (quoting *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999)).  In short, we explained that an employee pursuing a mixed case can bypass the EEO process for her discrimination complaint and file "directly with the MSPB." *Id.*  But, as we have already articulated, the employee cannot file a complaint directly with the MSPB if he must first proceed before the OSC, as in the case of an IRA appeal.

The dissent suggests that we "read *Kloeckner* to hold that only 5 U.S.C. § 7512's listed actions can support a mixed case." *Post*, at 32.  We do not.  Although we need not decide that issue in this appeal, we agree with the Federal Circuit's holding in *Ash v. Office of Personnel Management*, 25 F.4th 1009 (Fed. Cir. 2022) (per curiam), that certain retirement decisions may form part of a mixed case because they are directly appealable to the MSPB.  "Determinations affecting the rights or interests of an individual under the Federal retirement laws" are expressly enumerated in the regulation setting forth the MSPB's appellate jurisdiction, in addition to those adverse personnel actions listed in § 7512.  *See* 5 C.F.R. § 1201.3(a).  IRA appeals are governed by a different set of regulations.  *See id.* § 1201.3(b)(2).

3.

Second, Appellant's reading of § 7702(a)(1)(A) to encompass IRA appeals ignores the CSRA's statutory and regulatory framework.  The CSRA permits an employee who is

18

subject to any of the personnel actions enumerated in § 7512 -- those the Court in *Kloeckner* described as "serious," 568 U.S. at 44 -- to seek review of that personnel action by the MSPB in the first instance. 5 U.S.C. § 7513(d). But all other personnel actions must be pursued in front of the OSC before proceeding in front of the MSPB. 5 U.S.C. § 1214(a)(3).

A federal employee who alleges discrimination, regardless of any CSRA allegations, follows a different process. A discrimination complaint begins in the agency's EEO, and if the EEO's finding is unfavorable, the employee may appeal the decision to the EEOC or file an action in federal district court. *Laber*, 438 F.3d at 416. A mixed case before the MSPB provides an exception to this process by allowing an employee "affected by an action which [he] may appeal to the [MSPB]" to bypass the EEO. 5 U.S.C. § 7702(a)(1)(A); *see Perry*, 137 S. Ct. at 1981.

But the regulations applicable to IRA appeals do not allow an employee to raise discrimination allegations in connection with an IRA appeal. 5 C.F.R. § 1209.2(c); *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1327 (Fed. Cir. 2020) ("[I]n an IRA appeal to the [MSPB], the [MSPB's] review is limited to the merits of allegations of violations of the [WPA]. Discrimination claims may not be raised in that context."). Appellant urges us to disregard this directive, arguing that the statutes applicable to IRA appeals include no such limitation. To the contrary, 5 U.S.C. § 1221(a) authorizes an employee subject to "any personnel action . . . as a result of" a WPA violation to "seek corrective action from the [MSPB]." And 5 U.S.C. § 1221(e)(1) provides that the MSPB can order corrective action only if the employee demonstrates that the WPA violation "was a contributing factor in the

19

personal action." This language, consistent with the language in 5 C.F.R. § 1209.2(c), effectively restricts the MSPB's consideration of an IRA appeal to the WPA allegations. *See* 5 C.F.R. § 1209.2(c) ("In an [IRA] appeal, the only merits issues before the [MSPB] are those listed in 5 U.S.C. § 1221(e), i.e., whether the appellant has demonstrated that whistleblowing or other protected activity was a contributing factor in one or more personnel actions and, if so, whether the agency has demonstrated . . . that it would have taken the same personnel action(s) in the absence of the whistleblowing or other protected activity.").

Thus, if the employee finds himself in front of the MSPB as the result of an IRA appeal, he could not raise his discrimination allegations in that proceeding -- he would not be able to assert them until he filed an action for judicial review of the MSPB's decision in federal district court. Essentially, then, if an IRA appeal can serve as the basis for a mixed case, an employee asserting WPA allegations and discrimination allegations would not be required to exhaust his discrimination allegations at all. This result makes no sense -- even an employee asserting a personnel action enumerated in § 7512 as part of a mixed case would have to pursue his discrimination allegations at the administrative level prior to filing suit in federal district court -- which suggests that Congress did not intend for § 7702(a)(1)(A) to include IRA appeals. *See United States v. Rippetoe*, 178 F.2d 735, 737 (4th Cir. 1949) ("[A]ll laws are to be given a sensible construction and . . . a literal application of language which leads to absurd consequences should be avoided whenever a reasonable application can be given consistent with the legislative purpose.").

20

Appellant's argument becomes even more absurd considering that § 7702(a)(2) alternatively allows an employee to pursue a mixed case through his agency's EEO instead of before the MSPB. The employee asserting a mixed case based on an IRA appeal would first have to pursue his WPA allegations before the OSC, and then he would pair those allegations with his discrimination allegations and proceed before the EEO. In that scenario, the IRA appeal would give the employee the right to pursue his case before the EEO, even though he would be prohibited from raising his discrimination allegations in the IRA appeal process. If the purpose of a mixed case is to streamline the administrative review process for the employee, a mixed case involving an IRA appeal certainly would not advance that objective.

By the same token, Appellant points out that if an IRA appeal cannot serve as the basis for a mixed case, then an employee alleging both WPA claims and discrimination claims would be required to pursue those claims separately. Indeed, the Supreme Court in *Perry v. Merit Systems Protection Board* suggested that an employee should not have "to sever inextricably related claims, resorting to two discrete appellate forums, in order to safeguard [his] rights." 137 S. Ct. at 1987. But because the MSPB cannot consider an employee's discrimination allegations as part of his IRA appeal, his WPA claims and his discrimination claims are, by necessity, already bifurcated. The circumstances are thus the reverse of the situation the Court confronted in *Perry*, which involved claims that were initially brought as a mixed case and proceeded in tandem at the administrative level. *See* 137 S. Ct. at 1982. Notably, despite the MSPB's conclusion that it lacked jurisdiction over the mixed case alleged by the employee, the *Perry* Court held that the employee brought

21

"a paradigm mixed case" because he "alleges serious personnel actions (suspension and forced retirement) caused in whole or in part by prohibited discrimination." *Id.* at 1985 n.5. In other words, the employee properly pursued a mixed case, so he was entitled to take advantage of the streamlined appeal procedures applicable to such cases. By contrast, here, Appellant did not clear the initial hurdle to establish a mixed case.

## C.

Alternatively, Appellant contends that even if an IRA appeal does not satisfy § 7702(a)(1)(A) because that statute applies only to those personnel actions directly appealable to the MSPB, he nonetheless suffered a "constructive demotion" that is equivalent to such a personnel action. Specifically, he argues that his "categorical[] ban on being promoted," Opening Br. at 40, amounts to a reduction in grade or pay, both of which are personnel actions listed in § 7512.

As Appellant points out, the Federal Circuit has indeed recognized that the MSPB has treated a constructive demotion as "a reduction in grade or pay . . . for purposes of establishing its jurisdiction." *Hogan v. Dep't of the Navy*, 218 F.3d 1361, 1364 (Fed. Cir. 2000) (citing *Russell v. Dep't of the Navy*, 6 M.S.P.B. 585, 594–95 (1981)). However, the MSPB defines a constructive demotion as a situation "where an employee was re[-]assigned from a position which, due to the issuance of a new classification standard or correction of a classification error, was worth a higher grade; the employee met the legal and qualification requirements for promotion to the higher grade; and he was permanently re[-]assigned to a position classified at a grade level lower than the grade level to which he would otherwise have been promoted." *Solamon v. Dep't of Com.*, 119 M.S.P.R. 1, 7

22

(2012).  The DEA's failure to promote Appellant does not fall within the scope of this narrow definition, as Appellant seemingly acknowledges by arguing that we should find constructive demotion in broader circumstances.

But an employee's non-selection for a position is not equivalent to a constructive demotion and does not confer MSPB jurisdiction pursuant to 5 U.S.C. § 7513(d).  *See Robins v. Dep't of Just.*, 48 M.S.P.R. 644, 650–51 (1991).  As it is used in § 7512, the term "grade" "means a level of classification under a position classification system."  5 U.S.C. § 7511(a)(3).  And the term "pay" "means the rate of basic pay fixed by law or administrative action for the position held by an employee."  *Id.* § 7511(a)(4).  Appellant specifically alleges that his involuntary transfer would result in a "position at the same grade" as the position he held before the re-assignment, and he never claims that he was subject to a salary reduction.  J.A. 26.  Essentially, Appellant alleges that he was stuck at the GS-14 classification level due to the DEA's failure to promote him.  As such, Appellant's involuntary transfer constituted neither "a reduction in grade" nor "a reduction in pay" that would be directly appealable to the MSPB pursuant to 5 U.S.C. § 7512.  "[T]he right to appeal reductions in pay and grade . . . has been narrowly construed," and consistent with the statutory definitions of those terms, the employee must "show a demonstrable loss, such as an *actual reduction in pay*, to invoke [the MSPB's jurisdiction]."  *Broderick v. Dep't of the Treasury*, 52 M.S.P.R. 254, 258 (1992) (emphasis supplied).  Appellant has not done so here.

IV.

Lastly, Appellant argues that even if he failed to allege a mixed case, the district court should still have considered his discrimination claims. The proper form for a Title VII action is, indeed, federal district court. 42 U.S.C. § 2000e-5(f)(3); *see id.* § 2000e-16(d) (making § 2000e-5(f) applicable to federal employees). However, the district court considered only whether Appellant's discrimination claims were properly before it as part of a mixed case, not whether it could adjudicate the Title VII claims independently of the other claims. Accordingly, we remand for the district court to decide in the first instance whether it may address the merits of Appellant's Title VII claims. In doing so, the district court may evaluate whether Appellant properly exhausted his discrimination claims before filing suit. We take no position on these issues.

V.

For the foregoing reasons, we conclude that the district court properly dismissed Appellant's WPA claims and his related CSRA claims for lack of subject matter jurisdiction. But we remand to the district court to consider whether it may exercise subject matter jurisdiction over Appellant's Title VII claims independently of the WPA and CSRA claims.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

24

DIAZ, Circuit Judge, dissenting:

Robert F. Zachariasiewicz, Jr. served the Drug Enforcement Agency for two decades. After he complained about unlawful hiring practices and a proposed transfer policy, the agency allegedly refused to promote him, even though he applied to several posts for which he was qualified. For one position, despite being the most qualified candidate, he claimed that the DEA passed him over for an African American woman.

Federal employees like Zachariasiewicz may "seek corrective action from the Merit Systems Protection Board" for alleged whistleblower retaliation. 5 U.S.C. § 1221(a).[1] The process before the Board is known as an individual right of action ("IRA") appeal. *See id.* But in a wrinkle, the law requires that employees first present their whistleblower claims to the Office of Special Counsel—a prosecutorial federal agency responsible for protecting federal employees from "prohibited personnel practices" and otherwise "investigating governmental violations of law." 5 U.S.C. §§ 1212(a)(1), 1214(a)(3); *Flynn v. U.S. Sec. & Exch. Comm'n*, 877 F.3d 200, 203 (4th Cir. 2017) (citing 5 U.S.C. §§ 1211–19).

After some procedural wrangling, Zachariasiewicz did just that, but he received no relief from the Special Counsel. So he filed a "mixed-case appeal" with the Board. In the parlance of federal personnel law, a federal employee perfects a "mixed case" if he alleges: (1) he suffered an agency action that he "may appeal to the Merit Systems Protection

---

[1] The Board is a "quasi-judicial [federal] agency with the power to adjudicate disputes arising from adverse personnel actions taken against covered federal employees." *Zummer v. Sallet*, 37 F.4th 996, 1003 (5th Cir. 2022); *see also* 5 U.S.C. § 1204 (defining the powers and functions of the Board).

25

Board," and (2) certain unlawful discrimination motivated that agency action.  5 U.S.C. § 7702(a)(1); *see Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1980 (2017).

The mixed-case procedure allows the employee to bundle employment-related claims with discrimination claims and vests the Board with jurisdiction to hear them together.[2]  *See Perry*, 137 S. Ct. at 1980–81.  And if the employee desires judicial review of his mixed-case appeal, he may file in district court.  *See id.* at 1988; *see also* 5 U.S.C. § 7703(b)(2).[3]

Before the Board, Zachariasiewicz asserted, among other claims, whistleblower retaliation under the Whistleblower Protection Act and discrimination under Title VII of the Civil Rights Act.  Relevant here, he alleged: (1) the DEA's failure to promote him was retaliation for his protests about unfair employment practices, and (2) race and gender discrimination because the DEA once overlooked him—a white man—for a more diverse candidate.  But on the DEA's motion, the Board dismissed the discrimination claims for lack of jurisdiction, moving forward only on Zachariasiewicz's exhausted whistleblower claims.[4]

---

[2] An employee who meets § 7702(a)(1)'s requirements can also bring his mixed case before an agency's Equal Employment Opportunity office.  *See* 5 U.S.C. § 7702(a)(2).

[3] By contrast, judicial review of standalone whistleblower claims lies in the courts of appeal.  *See* 5 U.S.C. § 7703(b)(1)(B).

[4] A subset of Zachariasiewicz's whistleblower claims weren't in his complaint to the Special Counsel.  So the Board dismissed them as unexhausted per 5 U.S.C. § 1214(a)(3).

When the Board failed to timely address his remaining claims, Zachariasiewicz filed suit in federal court.[5] But the district court dismissed the suit, holding it lacked jurisdiction over Zachariasiewicz's bundled claims because he hadn't stated a mixed case. *Zachariasiewicz v. U.S. Dep't of Just.*, 395 F. Supp. 3d 734, 738–40 (E.D. Va. 2019). In so ruling, the court found Zachariasiewicz couldn't appeal his whistleblower retaliation claims to the Board in the manner 5 U.S.C § 7702(a)(1) contemplates. *See id.* In any event, said the court, Zachariasiewicz hadn't timely appealed to the Board. *Id.* at 740.

Our task is to decide which agency actions a federal employee "may appeal" to the Board under § 7702(a)(1). Zachariasiewicz argues that his IRA appeal fits the bill. And together with his Title VII claims, Zachariasiewicz says he's stated a mixed-case appeal, conferring jurisdiction on the district court.

My friends in the majority hold otherwise. As they see it, because Zachariasiewicz's whistleblower claims made a pit stop in the Office of Special Counsel, they weren't *directly* appealable to the Board, and so Zachariasiewicz hasn't alleged a mixed case under § 7702(a)(1).

With respect, the majority's reading imposes limitations absent from (and contrary to) the statutory text. I would instead take Congress at its word that an employee need only

---

[5] A plaintiff must usually obtain a "judicially reviewable" decision on his mixed case before he can seek relief in district court. *See* 5 U.S.C. § 7703(b)(2). But subject to an exception not relevant here, if the Board hasn't decided a mixed case within 120 days of filing, the plaintiff may proceed to district court. *Id.* § 7702(e)(1)(B); *see also Perry*, 137 S. Ct. at 1981 n.2. Zachariasiewicz filed his mixed case in the district court nearly eight months after filing with the Board.

allege agency action he can appeal to the Board, directly or not, to sustain a mixed case—as is true in an IRA appeal.  So I dissent.

## I.

Our job starts with the statute's plain language.  *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).  When that language is unambiguous, our inquiry ends there.  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018).  And when we construe "review rights" under the Civil Service Reform Act ("CSRA"), as we do here, we avoid a reading that "protract[s] proceedings, increase[s] costs, and stymie[s] employees."  *Perry*, 137 S. Ct. at 1980.

In my view, § 7702(a)(1)(A)'s plain language resolves this case.  To make out a mixed-case appeal, the statute requires an employee to allege that he's been subjected to agency action that he "may appeal" to the Board.  5 U.S.C. § 7702(a)(1)(A).  An IRA appeal of whistleblower claims clears that hurdle.

Whistleblower retaliation is one species of "prohibited personnel practices" set out in 5 U.S.C. § 2302(b).[6]  *See* 5 U.S.C. § 2302(b)(8).  In most instances, employees who

---

[6] The list of "prohibited personnel practices" includes (1) discriminating on the basis of a protected class; (2) improperly soliciting or considering recommendations in making personnel decisions; (3) coercing political activity; (4) obstructing the right to compete for employment; (5) influencing withdrawal from competition for employment; (6) granting any preference or advantage not authorized by law; (7) nepotism; (8) whistleblower retaliation; (9) retaliation for protected activity; (10) discriminating on the basis of conduct not adversely affecting performance; (11) violating a veterans' preference requirement; (12) violating merit system principles; (13) implementing or enforcing any improper (Continued)

suffer a "prohibited personnel practice" must lodge a complaint with the Office of Special Counsel. *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *3 (4th Cir. Apr. 19, 2022) (citing 5 U.S.C. § 1214(a)). If the Special Counsel finds "reasonable grounds" that such action occurred, he or she "must report it to the [Board], the employing agency, and the Office of Personnel Management." *Id.* (citing 5 U.S.C. § 1214(b)(2)(B)). If the agency doesn't act, only the Special Counsel may then petition the Board for relief. *See id.* (citing 5 U.S.C. § 1214(b)(2)(C), (b)(4)(A)).

But whistleblower claims are different. Employees unhappy with the result or pace of the Special Counsel's investigation may take (or, appeal) those claims to the Board. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a). As concerns the Board, an "appeal" is "[a] request for review of an agency action." 5 C.F.R. § 1201.4(f).

An IRA appeal easily satisfies that definition. And were there any lingering doubt, the regulations explain that IRA appeals fall under the Board's *appellate* jurisdiction. *See* 5 C.F.R. § 1201.3(b)(2) (describing IRA appeals as "[a]ppeals of actions appealable to the Board"); *id.* § 1209.2(a) ("Under 5 U.S.C. [§] 1221(a), an employee . . . may appeal to the Board from agency personnel actions alleged to have been threatened, proposed, taken, or not taken because of the appellant's whistleblowing or other protected activity.").[7]

---

nondisclosure policy, form, or agreement; and (14) improperly accessing an employee's or applicant's medical records. *See* 5 U.S.C. § 2302(b).

[7] The Federal Circuit has characterized an IRA appeal as "a direct appeal route" to the Board for whistleblower claims. *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 681 (Fed. Cir. 1992). And the Board itself has explained that "[i]n enacting section 1221 . . . Congress created an additional statutory appeal right to the Board." *Marren v. Dep't of* (Continued)

So by any plain reading of § 7702(a)(1)(A), an employee filing an IRA appeal is seeking relief from agency action appealable to the Board. Our inquiry should end here.

Instead, the majority presses on. Rather than accept the statute's plain text, my colleagues insist that "the Supreme Court's and our case law as well as the governing statutory and regulatory scheme" require us to graft a "directly appealable" element onto § 7702(a)(1)(A). Majority Op. at 14. The majority's rewriting of the statute is error.

## II.

## A.

My friends first say that binding precedent supports their construction of § 7702(a)(1)(A). *See* Majority Op. at 15–18 (citing *Kloeckner v. Solis*, 568 U.S. 41 (2012), and *Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011)). They find that "[t]he manner in which [*Kloeckner* and *Bonds*] have described the CSRA's processes clearly distinguishes between personnel actions that are *directly* appealable to the [Board] . . . and those that are not." Majority Op. at 15. Regrettably, the majority misreads these cases.

*Just.*, 51 M.S.P.R. 632, 638 (M.S.P.B. 1991), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992) (Table). I recognize that, in *Marren*, the Board concluded (wrongly) that it lacked jurisdiction to consider discrimination claims along with an IRA appeal, consistent with the majority's decision here. *See id.* at 639. But in doing so, *Marren* (like the majority) simply ignored § 7702(a)(1)'s plain text, which includes no such jurisdictional bar for IRA appeals.

30

In *Kloeckner v. Solis*, the Supreme Court addressed the forum in which an employee should proceed when the Board "dismisses [a mixed-case] appeal alleging discrimination not on the merits, but on procedural grounds." 568 U.S. at 44. It explained that "[w]hen an employee complains of a personnel action serious enough to appeal to the [Board] *and* alleges that the action was based on discrimination, she is said . . . to have brought a 'mixed case.'" *Id.* And in describing the "variety of ways" an employee may bring such a mixed case, the Court said, "the employee may initiate the process by bringing her case *directly* to the [Board], forgoing the agency's own system for evaluating discrimination charges." *Id.* at 45 (cleaned up) (emphasis added).

In *Bonds v. Leavitt*, we addressed (in relevant part) whether a plaintiff could sustain her civil-service claim for wrongful termination in district court as part of a mixed case that her agency didn't resolve. 629 F.3d at 377–80. We first held that district courts possess jurisdiction over an *entire* mixed case—including nondiscrimination claims—whenever agencies fail to decide the case within 120 days, as 5 U.S.C. § 7702(e) provides. *See id.* at 379. And because Bonds had adequately raised her civil-service claim in her Equal Employment Opportunity complaint—thus stating a mixed case—she had exhausted it. *See id.* at 379–80. In so holding, we first described one of the "several procedural paths" an employee might take to assert a mixed case, explaining she might choose to file "directly" with the Board. *Id.* at 378 (cleaned up).

According to the majority, these descriptions of § 7702(a)(1)'s route to bringing a mixed case prove that agency action must be directly appealable to the Board. And if either

31

*Kloeckner* or *Bonds* had analyzed which agency actions qualify under § 7702(a)(1)(A) to sustain a mixed case, my colleagues might be right.

But neither case grappled with the workings of an IRA appeal, much less what agency action an employee "may appeal" to the Board under § 7702(a)(1)(A). That's because those plaintiffs alleged that they had been wrongfully terminated. *See Kloeckner*, 568 U.S. at 47; *Bonds*, 629 F.3d at 376. In each case, the government (rightly) hadn't disputed that wrongful termination of a covered employee was an appealable agency action satisfying § 7702(a)(1)(A). *See* 5 U.S.C. §§ 7511, 7512, 7513(d). As the Supreme Court has said, such allegations make those "paradigm" mixed cases. *Perry*, 137 S. Ct. at 1985 n.5. So neither case guides us here.

Following the majority's reasoning, one should read *Kloeckner* to hold that only 5 U.S.C. § 7512's listed actions can support a mixed case.[8] *See* 568 U.S. at 44 & n.1. But the Federal Circuit apparently thought otherwise when it found that a "disability retirement decision" by the Office of Personnel Management could support a mixed case because that action was appealable to the Board under 5 U.S.C. § 8461(e)(1). *See Ash v. Off. of Pers. Mgmt.*, 25 F.4th 1009, 1011–12 (Fed. Cir. 2022) (per curiam) (citing *Kloeckner*, 568 U.S. at 44). I agree.

---

[8] Section 7512 allows an employee to challenge his (1) removal; (2) suspension for more than 14 days; (3) reduction in grade; (4) reduction in pay; or (5) furlough of 30 days or less. 5 U.S.C. § 7512. An employee who suffers any one of these actions "is entitled to appeal" to the Board. *Id.* § 7513(d).

32

The Court also *told us* what it meant when it wrote that a party could appeal "directly" to the Board. *Kloeckner*, 568 U.S. at 45. It simply meant that the party was "forgoing the agency's own system for evaluating discrimination charges." *Id.* So *Kloeckner*'s use of "directly" doesn't bear on the nature of the predicate agency action—it refers only to a plaintiff's ability to skip the Equal Employment Opportunity process. I read *Bonds* similarly—it discusses how one might bring a mixed case, not the universe of actions appealable to the Board. *See* 629 F.3d at 378.

In short, § 7702(a)(1)(A)'s plain language doesn't require that an agency action be "directly appealable" to the Board before it may sustain a mixed case. And neither *Kloeckner* nor *Bonds* supports adding that element to the statutory text.

## B.

Next, my colleagues say that reading § 7702(a)(1) to "encompass IRA appeals ignores the CSRA's statutory and regulatory framework." Majority Op. at 18. Their reasoning hinges on a single regulation. But that regulation can't bear the weight the majority gives it.

According to the majority, 5 C.F.R. § 1209.2(c) prohibits an employee from raising discrimination allegations with an IRA appeal. *See* Majority Op. at 19 (citing *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1327 (Fed. Cir. 2020)).[9] The regulation states that, in an IRA appeal, "the only merits issues before the Board are those listed in 5 U.S.C.

---

[9] In *Young*, the Federal Circuit likewise relied on 5 C.F.R. § 1209.2(c) to find that IRA appeals can "never" constitute mixed cases. *See* 961 F.3d at 1327–28. I disagree for the same reasons I discuss here.

33

§ 1221(e) . . . . The appellant may not raise affirmative defenses, such as claims of discrimination or harmful procedural error." 5 C.F.R. § 1209.2(c).

Zachariasiewicz argues that no statute supports this limitation. Not so, retorts the majority, identifying two: 5 U.S.C. § 1221(a) and § 1221(e)(1). The majority says these provisions align with the critical regulation, and together, they "effectively restrict[] the [Board's] consideration of an IRA appeal" to whistleblower claims. Majority Op. at 20. I cannot agree.

Section 1221(a) authorizes an employee to "seek corrective action" from the Board for "any personnel action taken, or proposed to be taken," against him because of whistleblower retaliation. 5 U.S.C. § 1221(a). And § 1221(e)(1) establishes the burden of proof for IRA appeals. It says that the Board "shall order such corrective action as [it] considers appropriate" in an IRA appeal if the employee proves that whistleblower retaliation "was a contributing factor in the personnel action" at issue. *Id.* § 1221(e)(1).

Neither provision bars hearing discrimination claims along with an IRA appeal when an employee states a mixed case under § 7702(a)(1). Section 1221(a) merely highlights the Board's authority to hear IRA appeals. And § 1221(e)(1) explains when the Board can order relief for whistleblower claims—it doesn't preclude the mixed-case procedure. *See* 5 U.S.C. § 7702(a)(1) (stating that, in a mixed case, the Board must "decide both the issue of discrimination and the appealable action in accordance with" 5 U.S.C. § 7701's procedures).

So the notion that an employee can't raise discrimination claims together with an IRA appeal finds refuge only in a regulation. But that regulation defies the clear and

34

unambiguous command of § 7702(a)(1). *See supra* § I. That is, the Board must decide an employee's discrimination claims, "[*n*]*otwithstanding any other provision of law*," so long as he has alleged agency action which he "may appeal" to the Board. 5 U.S.C. § 7702(a)(1) (emphasis added). I would therefore give 5 C.F.R. § 1209.2(c) no effect. *See, e.g.*, *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 452 (4th Cir. 2004) (declining to follow a regulation that evinced "an impermissibly restrictive construction of the statute").

The rest of the majority's reasoning flows from its elevation of regulation over statute. It first suggests that absolving an employee from administratively exhausting his discrimination claims before suing in district court would be nonsensical. *See* Majority Op. at 21. That consequence, of course, assumes an employee can't raise a discrimination claim with an IRA appeal. But as I've discussed, an employee *should* be able to raise (and thus exhaust) such claims together before the Board under § 7702(a)(1). I would ignore a regulation saying otherwise.

My friends next say that allowing an employee to pursue a mixed case through an agency's Equal Employment Opportunity office would be "even more absurd." Majority Op. at 21. Here, they focus on § 7702(a)(2)'s alternate route to a mixed case before an agency instead of the Board. The majority recognizes that its own interpretation leaves open a window to mixed-case review (because its crucial regulation doesn't reach agencies). Yet it quickly closes that window, without citation to any authority, instead finding that allowing review before an agency and not the Board wouldn't "streamline the administrative review process." *Id.*

35

But this so-called absurdity is of the majority's own making, which it then solves by foreclosing mixed-case review altogether. My interpretation of § 7702(a)(1) creates no such barrier, either before an agency or the Board. Nor does it force a dissatisfied employee to bifurcate judicial review of whistleblower and discrimination claims—based on the same agency action—between a court of appeals and a district court. *See* 5 U.S.C. § 7703(b)(1)(B), (b)(2).

To its credit, the majority acknowledges the Supreme Court's guidance that federal employees shouldn't have to "sever inextricably related claims, resorting to two discrete appellate forums, in order to safeguard [their] rights." *See* Majority Op. at 21 (quoting *Perry*, 137 S. Ct. at 1987). But this guidance doesn't help Zachariasiewicz, my colleagues say, because he could have never filed a mixed case before the Board. *See id.*

This contention, though, assumes the conclusion. And I see no way for the majority to reconcile its outcome with "the CSRA's objective of creating an integrated scheme of review." *Perry*, 137 S. Ct. at 1987 (cleaned up). As the Court has warned, parallel litigation on the same agency action undermines that purpose. *See id.*

In sum, Zachariasiewicz has stated a mixed-case appeal—establishing jurisdiction in the district court—because his IRA appeal alleges agency action appealable to the Board along with appropriate discrimination claims. *See id.* at 1984 ("[A] nonfrivolous allegation of jurisdiction generally suffices to establish jurisdiction upon initiation of a case."). So I would reverse the district court's holding to the contrary.

36

III.

Finally, I consider the district court's alternate basis for dismissal: Zachariasiewicz untimely appealed to the Board. *See Zachariasiewicz*, 395 F. Supp. 3d at 740. Zachariasiewicz advances three reasons why the district court was mistaken: (1) it applied the wrong filing provision; (2) if that provision applies, we should equitably toll the deadline; and (3) the government forfeited a timeliness objection by failing to raise it before the Board. I agree with the third reason, and thus would reverse the district court here, too.

To timely file an IRA appeal, an employee must file with the Board "[n]o later than 65 days after the date of issuance of the Special Counsel's written notification" that he or she is closing the investigation into the employee's claims. 5 C.F.R. 1209.5(a)(1); *see also* 5 U.S.C. § 1214(a)(3)(A)(ii) (setting a 60-day deadline, which the regulation extends to 65). Zachariasiewicz, relying on a Board order, filed his IRA appeal 78 days after receiving the Special Counsel's notice.

Zachariasiewicz had filed a mixed case with the Board before the Special Counsel concluded investigating his complaint (and before the Special Counsel's time to do so had run). Dismissing his case as premature, the Board's administrative law judge told Zachariasiewicz to "refile his appeal . . . no later than 180 days" after her decision. J.A. 111. Five weeks later, the Special Counsel notified Zachariasiewicz that the investigation was ending, freeing him to proceed before the Board. Though Zachariasiewicz refiled his mixed case ahead of the judge's deadline, he missed the statutory deadline by two weeks.

But when the government moved to dismiss Zachariasiewicz's mixed case before the Board, it didn't challenge timeliness. The government (successfully) raised the issue

37

for the first time in the district court. For me, this objection comes too late. *See Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved.").

Accordingly, the government waived its objection—unless the statutory deadline is jurisdictional. I think not.

"We treat a procedural requirement as jurisdictional only if Congress clearly states that it is." *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493, 1497 (2022) (cleaned up). "Congress need not incant magic words," but the relevant statute "must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* (cleaned up). For a filing deadline, "the question is whether [it] limits the power of the court rather than the rights or obligations of the parties." *Nauflett v. Comm'r of Internal Revenue*, 892 F.3d 649, 652 (4th Cir. 2018) (cleaned up).

Here, the statute says:

> An employee . . . may seek corrective action from the Board under section 1221, if such employee . . . seeks corrective action for a prohibited personnel practice described in section 2302(b)(8) . . . from the Special Counsel and . . . (A)(i) the Special Counsel notifies such employee . . . that an investigation concerning such employee . . . has been terminated; and (ii) *no more than 60 days have elapsed since notification was provided to such employee . . . that such investigation was terminated*.

5 U.S.C. § 1214(a)(3) (emphasis added).

38

This text doesn't clearly dictate a jurisdictional consequence.[10]  For one, § 1214(a)(3) doesn't state, "clearly or otherwise," that its deadline—which resides in its own subpart—is jurisdictional.  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 546 (4th Cir. 2019) (holding that a limitation provision was nonjurisdictional).  Rather, it speaks in "non-mandatory" terms of what an employee "may" do, not of what the Board has power to adjudicate.  *See id.* (cleaned up).  That's strong evidence the appeal deadline isn't jurisdictional.  *See Boechler*, 142 S. Ct. at 1498 ("Where multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear.").

What's more, the Supreme Court has "made plain that most time bars are nonjurisdictional."  *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015).  Such "filing deadlines [are] quintessential claim-processing rules, which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case."  *Id.* (cleaned up).  "That is so . . . even when the time limit is important . . . and even when it is framed in mandatory terms . . . [,] however emphatically expressed those terms may be."  *Id.* (cleaned up).  So to make a time limit jurisdictional, "Congress must do something special" that goes "beyond setting an exception-free deadline."  *Id.*  There's nothing special about § 1214(a)(3)'s deadline.

---

[10] The Board agrees.  *See Heimberger v. Dep't of Com.*, 121 M.S.P.R. 10, 13–16 (M.S.P.B. 2014) (finding that § 1214(a)(3)'s filing deadline is "not jurisdictional").

39

To be sure, some of our sister courts have held that § 1214(a)(3)'s exhaustion requirement—that an employee first present his claims to the Special Counsel before proceeding to the Board—is jurisdictional. *See Acha v. Dep't of Agric.*, 841 F.3d 878, 883 & n.3 (10th Cir. 2016); *McCarthy v. Merit Sys. Prot. Bd.*, 809 F.3d 1365, 1374–75 (Fed. Cir. 2016). *But see Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 925 n.3 (7th Cir. 2018) (doubting *Acha* and *McCarthy* after "the Supreme Court's recent jurisprudence requiring clear signals that a rule is truly jurisdictional"). For the Tenth Circuit, § 1214(a)(3)'s context and "its placement in the overall statutory scheme" made it "clear" that if a whistleblowing employee doesn't satisfy § 1214(a)(3)'s "exhaustion-of-remedies requirement" then the Board lacks jurisdiction over his claim. *Acha*, 841 F.3d at 883 n.3.

But my view on § 1214(a)(3)'s *filing deadline* isn't inconsistent with our sister courts' rulings on its *exhaustion requirement*. "Exhaustion is generally required as a matter of preventing premature interference with agency processes." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). It allows an agency to "function efficiently" and provides the agency "an opportunity to correct its own errors," while "afford[ing] the parties and the courts the benefit of its experience and expertise." *Id.*; *see also id.* at 763–64 (statutory provision at issue contained three requirements for judicial review—exhaustion, a limitations period, and appropriate venue—of which only exhaustion was jurisdictional). This comity concern contrasts with a filing deadline's (typically) mechanical purpose in moving along litigation. So the question presented here is different from the one our sister courts answered.

40

Thus, given the government's belated objection, the district court erred in enforcing the deadline.[11]

*          *          *

The Supreme Court has cautioned against reading employees' review rights under the CSRA in a manner that protracts proceedings, increases costs, and stymies employees. *See Perry*, 137 S. Ct. at 1980.  Rather than heed that warning, the majority prioritizes a regulation's directive—with no statutory basis—to affirm the district court's dismissal of a mixed-case appeal that meets the statutory requirements.  Because that outcome violates § 7702(a)(1)'s unambiguous mandate, leaving duplicative litigation in its wake, I respectfully dissent.

---

[11] Neither the district court nor the government questioned the validity of 5 C.F.R. § 1209.5(b), which permits equitable tolling of § 1214(a)(3)'s filing deadline. The same goes for 5 C.F.R. § 1209.5(a)(1)'s extension of the deadline from 60 to 65 days. These regulations bolster my view that the deadline isn't jurisdictional. *See Edmonson*, 922 F.3d at 546 ("When Congress makes a limitations period a jurisdictional prerequisite, then courts may not toll the limitations period on any equitable grounds.").

41